Charles F. WILLIS, Jr., Appellant,

v.

Elizabeth Firestone WILLIS, et al.

Charles F. WILLIS, Jr.,

v.

Elizabeth Firestone WILLIS, et al., Cleveland Trust Company, Appellants.

Nos. 80–2200, 80–2197.

United States Court of Appeals, District of Columbia Circuit.

Argued June 5, 1981.

Decided June 26, 1981.

---

Matthew A. Kane, Washington, D. C., for Charles F. Willis, Jr., appellant in No. 80–2200 and appellee in No. 80–2197.

John A. Beck, Washington, D. C., with whom Lee T. Ellis, Jr., Washington, D. C., was on the brief for The Cleveland Trust Company appellee in No. 80–2200 and cross-appellant in No. 80–2197.

Robert H. Rawson, Jr., Washington, D. C., with whom Linda S. Gillespie, Washington, D. C., was on the brief for The Firestone Bank appellee in No. 80–2200.

Before TAMM, ROBB, and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this case Charles Willis appeals from the District Court's decision that his former wife, Elizabeth Willis, was entitled to contribution for interest which she paid on a 1969 loan. Defendant Cleveland Trust, executor for Harvey Firestone (Elizabeth's father), appeals from the court's ruling that it had personal jurisdiction over Cleveland Trust. For the reasons set forth below, we reverse the District Court's determination that it could assert jurisdiction over Cleveland Trust. We affirm, although for different reasons than those relied on by the District Court, the court's decision to grant Elizabeth half of the interest paid by her. We also affirm the decisions of the District Court dismissing Charles Willis' claims against the Firestone Bank and against Elizabeth Willis.

## I. BACKGROUND

Because the extended series of financial transactions and the lengthy history of this litigation have been carefully documented in the District Court's opinion,[1] we will dis-

---

1. *See* Memorandum Opinion, *reprinted in* Joint Appendix (J.A.) at 210; Findings of Fact and Conclusions of Law, *reprinted in* J.A. at 118.

cuss only briefly those events which form the basis of this appeal. This case began when Charles Willis sued his former wife Elizabeth for a declaration of their rights to property, both real property located in the District of Columbia and personal property consisting mostly of stock owned jointly by Charles and Elizabeth, some of which was being held as collateral on a 1969 note with the Firestone Bank.[2] The basis of Charles' claims against Elizabeth initially derived from an antenuptial agreement and an alleged oral settlement at the time of their divorce.

When Charles learned during the course of litigation that Elizabeth's father, Harvey Firestone, had co-signed the 1969 note instead of Elizabeth, Charles amended his complaint by adding the Firestone Bank, which held the note, and Cleveland Trust Company, the executor of Harvey's estate. Charles claimed that he was discharged from the 1969 note by Harvey's substitution and that Harvey, Elizabeth and the Firestone Bank had converted his property and entered into a conspiracy to defraud him. He continued to assert his claims with respect to the real estate and to seek a declaration of his rights under the oral property settlement and the antenuptial agreement. Elizabeth counterclaimed for interest which she had paid on the 1969 note and on a series of previous notes.

Defendants Firestone Bank and Cleveland Trust moved to be dismissed for lack of personal jurisdiction. In a pretrial ruling, the District Court granted Firestone's motion because it found that Firestone did not do business in the District and that "virtually all communications" in connection with the 1969 note occurred outside the District.

As Harvey's executor, defendant Cleveland Trust was subject to the court's jurisdiction to the same extent that Harvey would have been. *See* D.C.Code Ann. § 13–421 (1973). The District Court found that because Harvey had an interest in real property within the District of Columbia, which was the basis for one of Charles' claims, Harvey, and consequently Cleveland Trust, was subject to the court's jurisdiction with respect to all of Charles' claims. After the court found that it had jurisdiction over Cleveland Trust, the executor counterclaimed against Charles to recover payments made by or on behalf of Harvey on the 1969 note.

At the trial, the District Court denied Cleveland Trust's counterclaim against Charles. It found that while Harvey was liable to the Firestone Bank as a co-maker on the 1969 note, Harvey was barred by section 3–407 [3] of the Uniform Commercial Code (UCC) from asserting a right of contribution against Charles.[4] Although the court found that Elizabeth was not liable on the 1969 note, it granted her counterclaim for interest paid on the note. The court reasoned that when Charles authorized Elizabeth to sign the note, he became liable in an action for contribution on account of actions taken by her within the scope of his authorization. The court also found that no defendant had attempted to defraud Charles or convert his property. It dismissed his allegations of conspiracy as "fantastic." [5]

---

2. The 1969 note was merely the last of a series of notes which Charles and Elizabeth had signed principally to finance Charles' business venture in Alaska Airlines. The District Court found that each note in the series constituted a separate contract.

3. Section 3–407 provides in part:
 As against any person other than a subsequent holder in due course
 (a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;
 (b) no other alteration discharges any party and the instrument may be enforced ac-

cording to its original tenor, or as to incomplete instruments according to the authority given.
UCC § 3–407(2).

4. The court found, and the parties agreed, that Ohio law controlled the merits of the claims arising from the 1969 note. For ease of reference, however, we adopt the convention of the District Court and the parties of referring to the comparable UCC section, which the court found to be substantially identical to Ohio law.

5. The court also held against Charles with respect to his claims to the real property and to his rights under the antenuptial agreement and the oral settlement. No party has appealed

Cleveland Trust appeals both from the District Court's determination that it was subject to the court's *in personam* jurisdiction and from the court's denial of its counterclaim against Charles for contribution. Charles appeals from the court's decision that it did not have *in personam* jurisdiction over the Firestone Bank, from the court's denial of his claims for fraud and conversion and from the court's decision to grant Elizabeth's counterclaim for contribution for interest paid on the 1969 note.

Because we reverse the District Court and dismiss Cleveland Trust as a defendant, we vacate the District Court's disposition on the merits with respect to both the claims against Cleveland Trust and its counterclaims against Charles. Because there is no question as to the court's jurisdiction over Elizabeth, we reach the merits of hers and Charles' claims against each other and affirm the court's decision to grant Elizabeth recovery of half the interest paid on the 1969 note.

## II. JURISDICTION OVER CLEVELAND TRUST

The District Court determined that, under the District of Columbia long arm statute,[6] Harvey's interest in the real estate located in the District of Columbia was sufficient to establish jurisdiction over Cleveland Trust with respect to all of Charles' claims. *See* Memorandum, *reprinted in* J.A. at 107, 109. Cleveland Trust does not dispute the District Court's determination that if the court would have had jurisdiction over Harvey it can now exert jurisdiction over Cleveland Trust as his executor. Cleveland Trust contends instead that Harvey's interest in the real estate did not provide a sufficient basis to assert jurisdiction with respect to all of Charles' claims.[7] We agree.

■ Section 13–423(b) of the District of Columbia long arm statute[8] provides that "[w]hen jurisdiction over a person is based solely upon this [long arm] section, only a claim for relief arising from acts enumerated in this section may be asserted against him." The District of Columbia courts have interpreted section 13–423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction. *See Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979) (*per curiam*); *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 159 (D.C.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). Because Charles' remaining claims against Harvey neither derived from nor are connected with Harvey's interest in the real estate, we find that the District Court erred in relying on the real estate as a basis for asserting *in personam* jurisdiction over Cleveland Trust with respect to the other unrelated claims.

■ In his brief and at oral argument before this panel, Charles did not rely on the theory advanced by the District Court. Instead, Charles now contends that because, under section 13–423(a)(1),[9] Harvey was transacting business in the District of Columbia, Cleveland Trust is subject to the court's jurisdiction. Because the District of Columbia courts have held that section (a)(1) was intended to extend the District's jurisdiction to the limits of the due process clause, *see Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808 (D.C.1976) (*en banc*), it is necessary to determine whether

---

either the court's jurisdiction to decide these claims or the court's disposition of the claims on the merits.

6. *See* D.C.Code Ann. § 13–421 *et seq.* (1973).

7. Because neither Charles nor Cleveland Trust has appealed the District Court's disposition of the merits of Charles' claim to the real estate, the District Court's determination that it had jurisdiction over Cleveland Trust with respect to that claim is not before us. We assume for the purposes of this analysis that jurisdiction did exist for that claim.

8. *See* D.C.Code Ann. § 13–423(b) (1973).

9. *See* D.C.Code Ann. 13–423(a)(1) (1973). Charles' counsel expressly rejected at oral argument any reliance on §§ 13–423(a)(3) and (a)(4), which essentially provided jurisdiction over torts committed in or having an effect in the District of Columbia, as a basis for jurisdiction. *See* D.C.Code Ann. §§ 13–423(a)(3) and (a)(4) (1973).

sufficient minimal contacts existed between Harvey and the District to satisfy due process. An examination of both the evidence presented in response to Cleveland Trust's Motion to Dismiss and the evidence that was adduced at trial reveals that Charles failed to satisfy his burden of proof.

In Charles' response to Cleveland Trust's Motion to Dismiss, it was alleged that Harvey Firestone had an interest in property in the District of Columbia and that he had paid off deeds of trust on that property. Charles also alleged that the other causes of action arose out of the "tortious conduct of the decedent acting alone or in concert with his daughter and the Firestone Bank to impair plaintiff's rights of action in the District of Columbia . . . ." *See Opposition of Plaintiff to Motion of Defendant The Cleveland Trust Company, reprinted in* J.A. at 100. Charles acknowledged that the 1969 note did not show that Harvey signed it in the District; however, he alleged that Harvey's signing had an impact in the District of Columbia. *See id.* at 101.[10]

As noted above, the *allegations* that Harvey had an interest in real estate in the District and paid off two deeds of trust did not provide a sufficient basis for exerting *in personam* jurisdiction over Cleveland Trust with respect to the other unrelated claims. Charles' second *allegation*, that Harvey acting in concert with his daughter impaired Charles' interests in the District, fails to allege that Harvey entered into the District, wrote letters into or placed calls in the District. Because Charles rejected sections (a)(3) and (a)(4) as the bases for jurisdiction, *see* note 9, *supra*, it does not matter whether Harvey's acts in Ohio had an effect in the District. Because no fact was alleged in response to the Motion to Dismiss to establish that Harvey was doing business or had any contact in the District, Charles failed to allege any claim—apart from the suit on the real estate—upon which the District Court might properly assert *in personam* jurisdiction over Cleveland Trust. *See Mosley v. Nationwide Purchasing, Inc.,*

485 F.2d 418, 420 (Temp.Emer.Ct.App.1973) (Tamm, J.) (interpreting D.C.Code § 13–423(a)).

Although the District Court made no findings after a full trial that there were any contacts between Harvey and the District of Columbia, Charles argues that evidence exists in the trial record that Harvey both placed calls in and sent letters to the District. The evidence noted by Charles establishes that Harvey consulted with his accountants in Ohio and subsequently entered into an agreement with Elizabeth to take her place on the 1969 note. *See* J.A., Vol. II, Defendant's Exhibits 132, 133 and 136. None of these exhibits establishes, however, that Harvey had any contact with the District of Columbia. Charles also notes that H. W. Harrell, whom the District Court found to be the "financial adviser of the Firestone family," sent two letters to Elizabeth's attorney. *See* J.A., Vol. II, Defendant's Exhibit 114 and Plaintiff's Exhibit 19. The first letter reported on all outstanding loans against Elizabeth and listed the total number of Firestone shares held by her. The second letter, written in response to a request from Elizabeth's attorney, noted the interest paid on loans held by Charles and Elizabeth. The evidence noted by Charles also establishes that Harvey placed two calls in the District of Columbia. *See* J.A., Vol. II, Defendant's Exhibits 128 and 131 and Plaintiff's Exhibits 25 and 60. The issue remaining before us is whether these contacts provided a sufficient basis for exerting jurisdiction over Cleveland Trust as Harvey's executor.

In determining whether the exercise of jurisdiction satisfied due process, the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), engaged in a two-pronged analysis. The Court found that the doctrine of "minimum contacts" performed two related but distinguishable functions. The first function is to protect defendants from the burden of litigating in distant forums. Relevant considerations,

---

**10.** Neither party submitted affidavits and the motion to dismiss was decided on the pleadings.

which the Court grouped under the rubric of reasonableness and fairness, include an assessment of the burden on the defendant considered in light of the forum state's interest in adjudicating the dispute, the plaintiff's need for some forum in which to litigate and the interstate judicial system's interest in efficient resolution of controversies. *See id.* at 292. The second prong, which recognizes the territorial limitations on the power of the states, requires that there be sufficient affiliating circumstances connecting the forum state and the nonresident defendant to empower the court to require that defendant to appear. *See id.* at 293–94, 100 S.Ct. at 565–66.

■ Under the first prong, we find that the interests of reasonableness and fairness do not favor adjudicating this case in the District of Columbia. The District of Columbia has little interest in providing a forum to a nonresident plaintiff. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Nor does the District have an interest in the subject matter of the suit; the contract was neither made nor performed in the District and the rights asserted on the contract involve, as the District Court found, unsettled issues of Ohio law. Moreover, the District has enacted no jurisdictional statute which might indicate its manifest interest in the subject matter in dispute. *See Shaffer v. Heitner,* 433 U.S. 186, 214–15, 97 S.Ct. 2569, 2584–85, 53 L.Ed.2d 683 (1977). While it might be convenient for Charles to bring this action in the District, there is no indication that this is the only forum available. Indeed, it would seem that a suit by Charles in Ohio, where the majority of parties and witnesses are located, and whose laws the parties agree govern, would advance the interest of the interstate judicial system. We do not mean to suggest that a center of gravity test is necessary to establish jurisdiction;

we only find that under the criteria noted in *World-Wide* there appears to be little interest either on the part of the District of Columbia or on the part of the interstate judicial system which would outweigh the burden placed on the nonresident defendant.

The second prong of *World-Wide* requires the presence of sufficient affiliating circumstances to empower a state to assert jurisdiction over a nonresident defendant. Although this determination presents a close question, we find that under *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978),[11] Harvey's limited contacts with the District of Columbia do not provide sufficient affiliating circumstances.

■ The fact that Harvey and Elizabeth entered into an agreement is by itself an insufficient contact. Absent some indication that the agreement was signed or negotiated in the District of Columbia, the fact that one party is a resident of the forum state is an insufficient basis for asserting jurisdiction over the other. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The alleged relevance of the communications between H. W. Harrell and Elizabeth's attorney derives from Charles' assumption that Harrell was acting as Harvey's agent. The District Court, however, did not find that to be the case. The court found that Harrell acted as financial adviser for the whole Firestone family. As such, the fact that Harrell informed Elizabeth of her outstanding loans or supplied her attorney with information at his request does not imply that Harrell was acting as Harvey's agent. Indeed, Harrell often looked after Charles' own business interests in Akron and acted as an intermediary, for example, between Charles and the Firestone Bank.

The two contacts that are relevant are the two telephone calls made by Harvey.

11. In *Kulko,* the former wife of the defendant brought suit in California to secure increased child support payments from defendant on behalf of their children. Although defendant was domiciled in New York, the California courts asserted *in personam* jurisdiction over him because he had "purposely availed himself of the benefits and protections of California" by sending his daughter to live with her mother there. The Supreme Court reversed, holding that the exercise of *in personam* jurisdiction by the California courts over the father, a New York domiciliary, would violate the due process clause of the Fourteenth Amendment.

One of these calls was to inform Elizabeth, who was in the process of divorcing Charles, that the bank was not going to demand immediate action on her note with Charles. During the second call, Harvey requested that the 1969 note be sent to him. While it is true these contacts concern a financial transaction—*i. e.*, the 1969 note—the District Court found that it was Harvey's concern for his daughter's financial stability that prompted him to devise a plan to reduce her indebtedness. *See* J.A. at 129. Thus, Harvey appears to have had no commercial purpose in placing calls in the District. The remaining question thus before us is whether these two non-commercial calls are sufficient affiliating circumstances to subject Harvey's executor to the jurisdiction of the District of Columbia.

*Kulko, supra,* reaffirmed the principle first stated in *International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed.2d 95 (1945), that the nature and the quality of the contacts control the propriety of the forum state's assertion of jurisdiction. Thus, *Kulko* distinguished acts taken in the context of a family relationship from those designed to solicit business. "[T]he mere act of sending a child to California to live with her mother is not a commercial act and connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State's judi-

cial jurisdiction." *Id.* at 101, 98 S.Ct. at 1701. Although the contact may be directly related to the transaction at issue, as the father's sending his child to California was in *Kulko,* the telling question is whether that contact was designed to derive a benefit from the forum state which would justify the assertion of jurisdiction.

Because Harvey's acts were not designed to derive any benefit of the sort contemplated by the Court in *Kulko,*[12] such as participation in a commercial venture in the District of Columbia, the nature of the contacts argues against a finding that Cleveland Trust should be subjected to the burden of defending its interests here. Our decision that jurisdiction is inappropriate because the contacts proved by Charles do not satisfy the second prong of *World-Wide* is reinforced by our evaluation of the first prong. Although the considerations grouped under the first prong may not be dispositive, *see World-Wide, supra,* 444 U.S. at 294, 101 S.Ct. at 565, the virtual absence of any interest of the forum state in hearing this matter also argues for dismissal for want of jurisdiction.[13]

### III. ELIZABETH'S COUNTERCLAIM FOR CONTRIBUTION

Charles appeals from the District Court's conclusion that Elizabeth was entitled to "contribution"[14] from Charles for the interest which she paid on the 1969 note.[15] The

---

**12.** *See Kulko v. California Superior Court,* 436 U.S. at 94–97, 101, 98 S.Ct. at 1698–99, 1701.

**13.** We affirm as well the District Court's decision that it did not have jurisdiction over the Firestone Bank. The court found that virtually all communications with respect to the 1969 note took place outside the District of Columbia. We find that the District Court's factual conclusion was correct and that the Firestone Bank's limited contact was an insufficient basis for personal jurisdiction.

**14.** When two persons have assumed a joint obligation such as a contract, a creditor normally may enforce the obligation against either party; however, as between the joint debtors each is only liable for one-half of the debt. "Contribution" is an equitable remedy designed to allow a joint debtor who has been compelled to pay the whole debt to recover half from the other debtor. *See Pietro v. Leonetti,* 26 Ohio App.2d 221, 270 N.E.2d 660, 662 (1971), *aff'd*

30 Ohio St.2d 178, 283 N.E.2d 172 (1972). Contribution is distinguished from "subrogation" by the fact that the right to contribution derives from the existence of a joint obligation. Subrogation, however, results from the fact that in some circumstances a party may be allowed to assert the claims of a creditor to prevent unjust enrichment.

**15.** The court held that Elizabeth was entitled to contribution for the interest paid on the whole series of notes which she co-signed with Charles. However, the court also found that each of the notes was a separate contract and that the statute of limitations barred recovery on the notes prior to the 1969 note. Because neither party appeals the court's determination that the statute of limitation bars recovery on prior notes, this appeal focuses solely on Elizabeth's rights in relation to the 1969 note.

court held that because Charles had authorized Elizabeth to sign as a co-maker, he became liable under the Ohio analogue of UCC section 3–407[16] for all obligations arising out of Elizabeth's actions as a co-maker. Charles contends that the court's result is not supported by Ohio law. Furthermore, he argues that the validity of the judgment in favor of Elizabeth is cast in doubt by other findings of the court. Because the court found that Elizabeth was neither a party to nor liable on the 1969 note, see J.A. at 215, Charles contends that the court's decision produces the anomalous result of preventing Charles from enforcing the note against Elizabeth but allowing her to sue him on the note.

 We affirm the result reached by the District Court but for different reasons than those advanced below. Although the court found Elizabeth was not liable on the 1969 note and that the collateral which she had pledged for the 1968 note had been released, the court also found that Elizabeth's separate agreement with her father resulted in her Firestone stock being used as collateral for the 1969 note. Thus, although Elizabeth was not personally bound by the 1969 note, her property was subject to foreclosure if either of the co-makers defaulted. We hold that, given these facts, Ohio law allows Elizabeth to recover as a subrogee.

Although Ohio does not allow a mere volunteer to create a claim by bestowing a gratuitous benefit, the Ohio courts have stated that a person who pays another's debts to protect his own property is not a volunteer. See In re Outhwaite's Estate, 94 N.E.2d 122 (Ohio Misc.1949), aff'd, 94 N.E.2d 59 (Ohio App.1950); Reed v. Ramey, 82 Ohio App. 171, 80 N.E.2d 250 (Ohio App. 1947). The court in Reed stated:

> [I]f the facts untraversed had shown that the [company] had a lien on plaintiffs' property which could be foreclosed, then the plaintiffs were fully warranted in protecting their title and ownership of the property from possible sale under foreclosure by paying the creditor, and would have a right to collect the amount

of such payment from the defendants. Under such circumstances, they could not be considered mere volunteers.

80 N.E.2d at 256. Here the Firestone Bank had a lien on Elizabeth's Firestone stock which she protected from foreclosure by maintaining the interest payments. Thus she had a protectible interest sufficient to entitle her to subrogation.

The District Court considered Elizabeth's claim that she be treated as a subrogee but rejected it because it would entitle her to collect the entire interest payment from Charles. The court felt that it would violate equitable principles to give Elizabeth a better position than she would have had if she had signed the 1969 note. We believe that the District Court was not compelled to reach that conclusion.

The District Court found that both Charles and Harvey were liable on the 1969 note. The court held, however, that since Harvey had signed the 1969 note without Charles' knowledge or approval, Harvey could not seek contribution from Charles for payments made on the note. The Court found that under section 3–407 of the UCC, Charles was discharged from liability on the note as against claims made by Harvey.

The District Court also found that, despite the fact that Elizabeth was not a party to or liable on the 1969 note, Charles was liable to Elizabeth for contribution. On this point the trial court found that Elizabeth could recover a portion of the interest that she had paid because the actions that she had taken were within the scope of Charles' authorization.

Although we are not required to decide any claims of Charles against Harvey, or vice versa, for purposes of our analysis here we find that Charles and Harvey were co-makers on the 1969 note. As such, each was entitled to contribution from the other. Furthermore, even assuming arguendo that the 1969 note was "altered," we believe that neither the literal language of section 3–407 of the UCC, referring only to alteration by the holder, nor the purpose of the section

**16.** See note 3, supra.

bars contribution in favor of Harvey. We reject any contrary holdings of the District Court.

Since we find that Charles and Harvey alone were the "co-makers" of the 1969 note, we disagree with the District Court's conclusion that Elizabeth could recover as a co-maker. Nevertheless, we do hold that Elizabeth could assert rights against Charles on a claim of subrogation. As a subrogee, it is true that Elizabeth could normally seek full recovery against either co-maker (*i. e.*, Charles or Harvey) for the interest that she paid on the 1969 note. Either co-maker could in turn seek contribution from the other. However, in considering the extent to which Elizabeth should be entitled to recover as a subrogee, the District Court could have apportioned the liability between the two co-makers. A remedy which would have allowed Elizabeth to have recovered only half of the interest payments from Charles was surely within the equitable powers of the District Court. We thus find that the result reached by the court was correct, although its limited conception of its powers prevented it from adopting what we consider to be the course most consistent with Ohio law.

### IV. CONCLUSION

Consistent with our opinion in this case, our judgments are as follows:

(1) We affirm the decision of the District Court dismissing Charles Willis' suit against the Firestone Bank.

(2) We reverse the decision of the District Court asserting personal jurisdiction over Cleveland Trust and remand the case with instructions to the District Court to dismiss Charles Willis' actions against Cleveland Trust and Cleveland Trust's counterclaims against Charles Willis.

(3) We affirm the District Court's judgment of $38,131.98 in favor of Elizabeth Willis against Charles Willis, albeit for reasons different than those advanced by the District Court.

(4) We affirm the additional judgments of the District Court in favor of Elizabeth

Willis with respect to claims asserted by Charles Willis against her.

*So Ordered.*