**SHOPPERS FOOD WAREHOUSE,**
Appellant,

v.

**Asuncion MORENO, Appellee.**

No. 96–CV–21.

District of Columbia Court of Appeals.

Argued Dec. 18, 1997.
Decided July 16, 1998.

Michael P. Broderick, Silver Spring, MD, for appellant.

Jill F. Cohen, with whom Wayne R. Cohen, Washington, DC, was on the brief, for appellee.

Before SCHWELB, FARRELL, and REID, Associate Judges.

REID, Associate Judge:

The main issue presented by this case is whether the trial court had personal jurisdiction over appellant, a nonresident corporation

which advertised its grocery stores in the District of Columbia communications media, where appellee, a District resident, alleged she suffered personal injuries in one of appellant's Maryland stores located near the District's border. The trial court concluded that it had personal jurisdiction over appellant. We affirm.

## I.

### FACTUAL SUMMARY

A District of Columbia jury found that appellee Asuncion Moreno slipped and fell in a grocery store owned by appellant Shoppers Food Warehouse MD Corporation and, as a result of Shoppers' negligence, sustained back and hand injuries. She was awarded damages in the amount of $197,307 for past and future medical expenses, mental anguish, and pain and suffering.[1] From the beginning of Ms. Moreno's lawsuit, Shoppers argued that the trial court lacked personal jurisdiction over it under D.C.Code § 13–423(a)(4) (1995) (causing tortious injury in the District of Columbia).[2] Later, Ms. Moreno claimed that even if jurisdiction were not based on subsection (a)(4), it rested on § 13–423(a)(1) (transacting any business in the District of Columbia).

Shoppers maintained that § 13–423(a)(4) did not apply because no tortious injury took place in the District. Furthermore, Shoppers argued that Ms. Moreno failed to show the applicability of § 13–423(a)(1) which, they asserted, must be read in conjunction with § 13–423(b). In its order of June 22, 1994, the trial court agreed with Shoppers that

1. The breakdown of the jury award was: $6,307.00 for past medical expenses; $44,000 for past pain and suffering; $75,000 for future pain and suffering; $22,000 for past mental anguish; and $50,000 for future mental anguish.

2. In relevant part, D.C.Code § 13–423 states as follows:
   (a) A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
   (1) transacting any business in the District of Columbia;
   * * * * * *
   (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or

subsection (a)(4) was inapplicable because Ms. Moreno's injury occurred in Maryland, not the District. However, the trial court concluded that there was personal jurisdiction under subsection (a)(1) for the following reasons:

First, it is reasonable to require the Defendant to defend this suit in the District of Columbia.... The Defendant owns numerous stores in Maryland and Virginia, several of which are located within a few miles of the District of Columbia border.

... The Defendant contracts with and advertises in [T]he Washington Post, thereby targeting and soliciting customers in the District of Columbia area.... Furthermore, the Defendant has failed to "show that it [is] at a 'severe disadvantage' in being required to defend in [the District of Columbia]" ... (quoting *Electronic Media Int'l v. Pioneer Comm., Inc.,* 586 A.2d 1256, 1258 (Me.1991)[) ]. Since the Plaintiff resides in the District, she has a strong interest in litigating this suit here.

Second, the Defendant, by contracting with Washington based businesses (i.e., The Washington Post, the District of Columbia Yellow Pages) for adverti[s]ing purposes, has transacted business in the District of Columbia. Thus, the Defendant purposefully and voluntarily availed itself of the privileges and protections of the District of Columbia....

Finally, the Defendant's contacts with the forum state were of such quality and nature that it is reasonable for the Defendant to reasonably anticipate being haled

solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

* * * * * *

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

into court in the District of Columbia. It is reasonable to conclude that the Defendant derives a substantial portion of its revenue from District of Columbia residents it specifically targets with advertisements that demonstrate how the Defendant's prices compare favorably with the prices in supermarkets....

Although the trial court did not explicitly mention § 13–423(b) in its June order, it referenced a prior trial court opinion, *Daniels v. Knoff,* 116 Daily Wash.L.Rptr. 2053, 2057 (Super.Ct.1988), involving an advertisement in the District by a nonresident corporation. That opinion stressed "the foreseeability of injury to District of Columbia plaintiffs as a result of defendant's actions and the consequences of its actions by soliciting and advertising for business in the District of Columbia."[3] Accordingly, the trial court "conclude[d] that there are enough contacts with the District of Columbia in this case to satisfy the minimum contacts requirement."

Shoppers appeals on the basis that the trial court's order of June 22, 1994, constituted error because: (1) personal jurisdiction over it could not be based upon § 13–423(a)(1) and (b); (2) the trial court erred in denying its motion for a directed verdict; and (3) the trial court erred in permitting the jury to award damages for a permanent injury. We find no reason to disturb the trial court's judgment.

## II.

## ANALYSIS

### A.

### Personal Jurisdiction

This court has never determined whether newspaper and other advertisements in the District by a nonresident corporation owning a chain of stores, some of which are located in very close proximity to the District's borders, are sufficient to meet the minimum contacts requirement of the District's long-arm statute, and whether the advertising constitutes a sufficient nexus for the District's exercise of jurisdiction over a personal injury lawsuit where the injury took place in a store in a neighboring jurisdiction. Trial courts in the District that have examined this issue have disagreed. Different judges in both the Superior Court of the District of Columbia and the United States District Court for the District of Columbia have expressed different views at different stages of cases involving Shoppers as a defendant.[4]

■ We begin with certain fundamental principles that shape our opinion in this matter. First, in *Trerotola v. Cotter,* 601 A.2d 60 (D.C.1991), we said: " 'A court may properly assert personal jurisdiction over a nonresident [1] where a statute authorizes service of process and [2] where such service is consistent with due process.' " *Id.* at 63 (quoting *Smith v. Jenkins,* 452 A.2d 333, 336 (D.C. 1982) (other citation omitted)). Thus, in accordance with the intent of Congress in enacting D.C.Code § 13–423, we must interpret that statute to "permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause" of the Fifth and Fourteenth Amendments to the Constitution of the United States. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 810–11 (D.C.1976) (en banc); *see also Hummel v. Koehler,* 458 A.2d 1187, 1190 (D.C.1983); *Rose v. Silver,* 394 A.2d 1368, 1369 (D.C.1978).[5] Second, if " 'the defendant

3. *Daniels* also concluded that "defendant's activities, *i.e.,* the advertising and soliciting for business which presumably has attracted this plaintiff, as well as many other District of Columbia residents to its stores, clearly has caused a consequence in the District, *i.e.,* plaintiff's injuries." 116 Wash.L.Rptr. at 2057.

4. The differences in the views of the judges are reflected in the orders of June 22, 1994, and December 15, 1995, in this case; in *Duffy v. Shoppers Food Warehouse,* CA No. 93–2372

(D.D.C.), 1994 WL 151204, at 3 and in the order of July 31, 1995, transferring the matter to the United States District Court for the District of Maryland.

5. We have held previously that "the 'transacting any business' provision is coextensive with the due process clause." *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) (en banc) (citations omitted), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *see also Hummel, supra,* 458 A.2d at 1190.

purposefully avails itself of the privilege of conducting activities within the [District], thus invoking the benefits and protections of its laws,'" *Smith, supra,* 452 A.2d at 336–37 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)),[6] and could "'reasonably anticipate being haled into court [in the District],'" *Id.* at 336 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)), it "would [not] offend 'traditional notions of fair play and substantial justice'..." to "[allow] ... suit to be brought in the District of Columbia." *International Union of Elec., Salaried, Mach., and Furniture Workers v. Taylor,* 669 A.2d 699, 700 (D.C.1995) (citation omitted). Third, when jurisdiction is alleged based solely upon § 13–423, the nexus requirement set forth in § 13–423(b) must be met, that is to say, the claim for relief must "aris[e] from" one of the jurisdictional acts, such as "transacting business," enumerated in § 13–423.

■ We now turn to an application of the foregoing principles. We conclude that Shoppers' advertising in The Washington Post and the Yellow Pages, designed to target and attract District residents to its nearby Maryland and Virginia stores, amounted to transacting business in the District of Columbia under D.C.Code § 13–423(a)(1),[7] and that jurisdiction was proper provided Ms. Moreno established a nexus between her injury and Shoppers' advertisements in the District sufficient to satisfy § 13–423(b).

■ Our case law has not construed § 13–423(b)'s "arising from" requirement restrictively. Most recently, for example, in *Trerotola, supra,* we interpreted that nexus to mean only "that the claim raised [must] have a discernible relationship to the 'business' transacted in the District." 601 A.2d at 64

(citations omitted). We went on to explain that this "discernible relationship" is shown if "'certain minimum contacts' between the nonresident and the forum" exist. *Id.* (quoting *World–Wide Volkswagen Corp., supra,* 444 U.S. at 291, 100 S.Ct. 559). These minimum contacts reflect "'conduct and connection with the forum state ... such that [the nonresident] should reasonably anticipate being haled into court there.'" *Id.* (quoting *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559). Stated differently, § 13–423(b) bars only "claims 'unrelated to the acts forming the basis for personal jurisdiction.'" *Id.* at 63 (quoting *Willis v. Willis,* 211 U.S.App.D.C. 103, 655 F.2d 1333, 1336 (1981) (other citation omitted)). Section 13–423(b) thus operates as a due process check on the reach or scope of the "transacting business" provision of the long-arm statute.

■ Here, the trial court found that Shoppers "owns numerous stores in Maryland and Virginia, several of which are located within a few miles of the District of Columbia border." The trial court also determined that Shoppers "contracts with and advertises in [T]he Washington Post [and the Yellow Pages], thereby targeting and soliciting customers in the District of Columbia area." In doing so, it "voluntarily availed itself of the privileges and protections of the District of Columbia...." Accordingly, the trial court concluded, Shoppers' "contacts with the [District] were of such quality and nature that it is reasonable for [it] to reasonably anticipate being haled into court in the District of Columbia." Consistent with this conclusion, we hold that there is no jurisdictional bar to Ms. Moreno's claim because it has a "discernible relationship," *Trerotola, supra,* to Shoppers' advertising and soliciting of customers in the District of Columbia.[8] By advertising and

---

6. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

7. Shoppers argues that "there is simply no evidence in the record from which any conclusion could be reached that Shoppers Food Warehouse MD Corp., the defendant, contracted for any of

this advertising, or that it did so in the District of Columbia." However, the trial court could reasonably assume, in the absence of evidence to the contrary and evidence relating to the corporate structure of Shoppers, that the advertisements in the District for Shoppers' grocery stores in Maryland were placed by Shoppers Food Warehouse MD Corp.

8. Shoppers contends that in this case the nexus requirement is not satisfied because there is no inherent relationship between the duty breached

soliciting customers in the District, Shoppers could reasonably anticipate being haled into court to defend against a personal injury suit brought by a District resident. In short, Ms. Moreno met the requirements of § 13–423(b).

Our dissenting colleague would require proof that Shoppers' extensive advertising in the District induced Ms. Moreno personally to shop at its Maryland store. No matter how much an advertiser saturates a locale, in the dissent's view, a jurisdictional link between advertising and predictable consumer response is not enough to meet § 13–423(b)'s requirement; plaintiff must show that *this* particular consumer responded to the solicitations, by proof at least, one supposes, that she was a regular reader of The Washington Post. Our decisions support no such restrictive gloss on § 13–423; as cases like *Trerotola* make clear, it requires only a practical link, consistent with due process, between the activity conducted in the jurisdiction (retail advertising) and the claim for relief (injury while shopping). Our colleague banishes to distinctly secondary status what for us are primary considerations embodied in § 13–423(b): the predictability that persons (D.C. residents) specifically solicited to shop in the advertiser's stores will do so, and the expectation reasonably imputed to the advertiser that relief for shopping-related injuries will be sought in the courts where those persons reside.

## B.

### The Motion For A Directed Verdict

■ Shoppers challenges the trial court's denial of its motion for a directed verdict.

At the conclusion of Ms. Moreno's case, Shoppers moved for a directed verdict, contending there was "no evidence in the case that defendant created the condition" leading to Ms. Moreno's injury. However, Ms. Moreno introduced testimony from Ms. Brenda McCray showing that okra was on the floor of the produce section of the store on the day Ms. Moreno's injury occurred, and that Ms. McCray had notified a man in an apron, whom she regarded as a store employee, about the okra. He told her "that wasn't his department." In addition, Ms. McCray testified that she heard other people talking about the okra on the floor; and warned her mother, with whom she was shopping, to be careful. Ms. McCray saw Ms. Moreno fall and helped her up.[9] Ms. Moreno was shaking and crying. Ms. McCray observed "smashed okra" on the floor and on the back of Ms. Moreno's sweater. She testified it was the same okra about which she had warned the store employee.

In denying Shoppers' motion for a directed verdict, the trial court said, *inter alia:*

> [T]he Court is satisfied that there's enough evidence that a jury could infer that the person with the white apron putting apples on the cart, who said this is not my department is enough for [the jury] to conclude that he was an employee, so I'll deny that motion.

The trial court also denied Shoppers' renewed motion for a directed verdict at the conclusion of the defense case.

We see no basis on which to disturb the trial court's ruling.[10] It is well-settled that

---

(to provide a safe store) and the "transaction" of advertising in the District of Columbia media. Under this reading of the nexus requirement, Ms. Moreno would have to show something akin to false advertising by Shoppers. Since *Trerotola* requires only a showing of a "discernible relationship" between the particular claim and the business transacted, Shoppers appears to impose a heavier burden on Ms. Moreno than *Trerotola* requires. *Id.* at 63–65. The record reveals extensive and repeated advertising by Shoppers in The Washington Post. In light of such advertising, Ms. Moreno's case is dissimilar to those in which plaintiffs based their jurisdictional claims on a single advertisement, or sporadic advertising from a travel agency located far from the forum state. *See, e.g., Crocker v. Hilton Int'l*

*Barbados, Ltd.*, 976 F.2d 797, 800 (1st Cir.1992); *Witbeck v. Bill Cody's Ranch Inn*, 147 Mich.App. 587, 383 N.W.2d 253 (1985), *rev'd*, 428 Mich. 659, 411 N.W.2d 439 (1987).

**9.** Ms. McCray did not know Ms. Moreno.

**10.** The focus of Shoppers' argument in the trial court as to the sufficiency of the evidence centered on whether there was notice to a store employee of the okra on the floor. On appeal, Shoppers argues: (1) "there was simply no evidence that [it] or its employees had caused the vegetable matter to be on the floor"; (2) the period of time between when Ms. McCray saw the okra on the floor and Ms. Moreno fell (thir-

the determination of negligence is a factual issue. *See Barrett v. Harris*, 406 A.2d 1266, 1267 (D.C.1979); *American Marietta Co. v. Griffin*, 203 A.2d 710, 711 (D.C.1964). "When the case turns on disputed factual issues and credibility determinations, the case is for the jury to decide." *Durphy v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.*, 698 A.2d 459, 465 (D.C.1997) (citations omitted). Moreover, "[i]n assessing the legal sufficiency of the evidence, neither the appellate court nor the trial court may act as the trier of fact, and each must 'take care to avoid weighing the evidence, passing on the credibility of the witnesses, or substituting [its] judgment for that of the jury.'" *District of Columbia v. Perez*, 694 A.2d 882, 884 (D.C.1997) (quoting *Alliegro v. ACandS, Inc.*, 691 A.2d 102, 105 (D.C.1997)).

On the record before us, we conclude that reasonable jurors could reasonably find, by a preponderance of the evidence, that Shoppers received notice of the okra on the floor, and that Shoppers had time to clean up the okra prior to Ms. Moreno's fall. Accordingly, we do not disturb the jury's conclusion as to Shoppers' negligence.

## C.

### Permanent Injury Damages

■ Finally, Shoppers challenges the award to Ms. Moreno of damages for permanent injury. With respect to permanency, the trial court instructed the jury:

> In this case the plaintiff has offered evidence that as a result of the incident the plaintiff suffered personal injury with residual effects which [exist] to the present time. Although no physician or expert was called to give an opinion as to the expected duration of the injury, from the facts and circumstances in the case and from the nature and duration of the injury, you may, if you believe the evidence, infer that the plaintiff has suffered a permanent injury.

This charge was consistent with our case law. The trial court informed Shoppers that Ms.

Moreno was entitled to an instruction on permanency, but Shoppers could "argue the weight that the jury should attach to it."

We have said that "when the bad effects of an injury have continued for years, lay[persons] may reasonably infer permanence, even though there is no expert prediction that these injury residuals will continue. Evidence of pain and suffering in existence at the time of the trial has been held sufficient to take the question of permanence to the jury." *American Marietta, supra*, 203 A.2d at 712 (citations omitted). Furthermore, where the issue of permanent damages is properly before the jury, as we conclude it was in this case, "the jury ... [is given] broad discretion in awarding damages ... [as long as] its award [is] supported by 'substantial evidence.'" *Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621, 642 (D.C.1995).

Shoppers presented no testimony regarding the nature or permanency of Ms. Moreno's injuries. However, both Ms. Moreno and her orthopedic specialist testified concerning the nature of her injury and her continuing problems. Her orthopedic specialist stated she will continue to experience discomfort. Ms. Moreno testified that she still suffered from the injury at the time of the trial, had to wear a back brace, and had to limit or cease doing certain activities. This testimony from the doctor and Ms. Moreno provided an adequate basis to justify permitting the jury to consider and award future damages for permanent injury.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

SCHWELB, Associate Judge, dissenting:

The District's long-arm statute provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C.Code § 13–423(b) (1995). Asuncion Moreno's assertion of personal jurisdiction

---

teen to fifteen minutes) "is legally insufficient to establish 'constructive notice' on the part of Shoppers"; and that there is "no evidentiary basis for finding that [the man in the apron to whom Ms. McCray spoke,] was an employee of Shoppers...."

over Shoppers Food Warehouse MD Corp. (Shoppers) was "based solely" on § 13–423, but she failed to demonstrate that her claims "ar[ose] from" Shoppers' contacts with the District. I would therefore hold that the motions judge should have granted Shoppers' motion to dismiss for lack of personal jurisdiction.

## I.

Shoppers is a Maryland corporation. It operates no stores in the District, and it has no office here. In opposing Shoppers' motion to dismiss the complaint for lack of personal jurisdiction, however, Ms. Moreno claimed that Shoppers transacts business in the District, within the meaning of § 13–423(a)(1), by advertising in The Washington Post and the Yellow Pages, and that the Superior Court therefore had jurisdiction over Shoppers.

The burden of proving the necessary jurisdictional facts, as set forth in the long-arm statute, is on the plaintiff. *Trerotola v. Cotter,* 601 A.2d 60, 64 n. 2 (D.C.1991), *citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).[1] Ms. Moreno has not alleged, by affidavit or otherwise, that her presence in Shoppers' store was precipitated by those advertisements, nor has she claimed that her injury was related in any way to Shoppers' jurisdictional contacts with the District. The question before us is whether, under these circumstances, the motions judge correctly held that the court had jurisdiction over Shoppers.

## II.

In order to defeat Shoppers' motion to dismiss the complaint, Ms. Moreno was required first, to establish jurisdictional facts sufficient to reach the defendant under the District's long-arm statute, and second, to show that it would be consistent with due process to require Shoppers to defend the suit in the District. *See International Union of Electrical, Salaried, Machine, and*

*Furniture Workers v. Taylor,* 669 A.2d 699, 699–700 (D.C.1995). Here, the first and dispositive question is whether Ms. Moreno has alleged facts which bring the case within the jurisdictional requirements of D.C.Code § 13–423(b), or, more specifically, that the claim arises from Shoppers' activities in the District.[2] If Ms. Moreno has not satisfied this statutory requirement, then we have no occasion to inquire as to whether the Constitution has been transgressed. *Id.* at 700. Indeed, if the case can be decided on statutory grounds, then any constitutional inquiry would contravene the "deeply rooted doctrine that a constitutional issue is to be avoided if possible." *Id.* (citation omitted).

"Courts have uniformly held that a subsection (a)(1) confers personal jurisdiction over a defendant only if the plaintiff's claim arises from the defendant's contact with the District." *Everett v. Nissan Motor Corp.,* 628 A.2d 106, 107 (D.C.1993) (citation omitted). Accordingly, we have repeatedly dismissed claims where the "arising from" requirement of § 13–423(b) has not been satisfied. *See, e.g., id.* at 107–08 (products liability suit against Nissan following an automobile collision in North Carolina did not arise out of Nissan's distribution of automobiles in the District); *Trerotola, supra,* 601 A.2d at 64–66 (employee's claim for a retirement gift based on implied contract did not arise out of employer's representation of unions in the District); *Berwyn Fuel Inc. v. Hogan,* 399 A.2d 79, 80 (D.C.1979) (per curiam) (personal injury suit against fuel company whose truck struck a car in Maryland did not arise out of fuel company's occasional deliveries to the District).

The present case falls neatly within these precedents. Whatever the nature and extent of Shoppers' activities within the District, Ms. Moreno's injury did not arise from those activities. So far as we can discern from the record, Ms. Moreno would have suffered the injuries for which she seeks compensation in this action even if Shoppers had not advertised in the District at all.

---

1. The motions judge wrote in her order of June 22, 1994 that "the burden of proving that jurisdiction is improper is on the moving party."

2. I agree with the majority that the "transacting any business" requirement of subsection (a)(1) has been satisfied.

According to the majority, "[o]ur case law has not construed § 13–423(b)'s 'arising from' requirement restrictively." Maj. op. at 110. The cases that I have cited, however, stand for the proposition that the statutory language is to be construed in accordance with its terms. *See also Bayles v. K–Mart Corp.*, 636 F.Supp. 852, 854 (D.D.C.1986) ("the 'arising from' requirement . . . has been strictly enforced by courts in this jurisdiction"); *id.* at 854 n. 2 (citing cases). We have explained that

> the statute would not grant the Superior Court jurisdiction over a nonresident defendant with respect to a claim arising from a shipment of goods to a purchaser in Pennsylvania, solely on the ground that the defendant had also shipped goods to purchasers in the District.

*Cohane v. Arpeja–California, Inc.*, 385 A.2d 153, 158 (D.C.) *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); *accord Everett, supra*, 628 A.2d at 108; *Berwyn Fuel Inc., supra*, 399 A.2d at 80. Thus, no matter how extensive a defendant's contacts with the District may be, if those contacts are unrelated to the plaintiff's claim, then they cannot serve as a basis for exercising personal jurisdiction under § 13–423(b).[3]

### III.

The majority's view that the trial court properly exercised personal jurisdiction over Shoppers appears to rest on the following rationale: (1) under *Trerotola*, § 13–423(b) operates merely as "a due process check" on § 13–423(a)(1), and (2), the exercise of personal jurisdiction over Shoppers comports with due process, because Shoppers "could reasonably anticipate being haled into court" in the District. See maj. op. at 110. I am unable to agree with this reasoning.

The District's long-arm statute, by its terms, confers only limited or *specific* jurisdiction, and not *general* jurisdiction, and it has been construed accordingly.[4] It is true that § 13–423 should be read in conjunction with the Due Process Clause, *see Environmental Research Intern., Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810–11 (D.C.1976) (en banc), but the due process limits of subsection (b) are defined by the constitutional bounds of *specific* jurisdiction. If Ms. Moreno had sought to obtain personal jurisdiction over Shoppers based on a *general* jurisdiction theory, then she could have invoked D.C.Code § 13–334(a) (1995). Section 13–334(a) authorizes service of process on any foreign corporation doing business in the District, and it confers jurisdiction over any such corporation which "carries on a consistent pattern of regular business activity within the [District]." *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C.1981) (per curiam).[5]

The distinction between statutes conferring general jurisdiction and those conferring specific jurisdiction becomes more readily apparent when § 13–334(a) and § 13–423 are compared to their corresponding bodies of Supreme Court case law. Both § 13–334(a)[6]

---

**3.** Although it may be predictable that residents of the District will be persuaded by Shoppers' advertising to shop in Shoppers' Maryland stores, see maj. op. at 111, Section 13–423(b) confers jurisdiction only if the particular claim before the court arises from Shoppers' activity in the District, and not if it is predictable that some other plaintiff's claim might so arise.

**4.** "Section 13–423(a)(1) provides special, not general jurisdiction." *Schwartz v. CDI Japan, Ltd.*, 938 F.Supp. 1, 5 (D.D.C.1996); *see First Chicago Int'l v. United Exch. Co., Ltd.*, 267 U.S.App.D.C. 27, 29 n. 2, 836 F.2d 1375, 1377 n. 2 (1988).

**5.** In *AMAF Int'l Corp., supra*, the court explained the differences between §§ 13–334(a) and 13–423 as follows:

> Under D.C.Code 1973, § 13–334(a), a foreign corporation which carries on a consistent pat-

tern of regular business activity within the jurisdiction is subject to the general jurisdiction of our courts, upon proper service, and not merely for suits arising out of its activity in the District of Columbia. This is in direct contrast to the "transacting any business" provision of our long-arm statute, § 13–423(a)(1), under which jurisdiction is limited to claims arising from the particular transaction of business which forms the basis of jurisdiction. D.C.Code 1973, § 13–423(b).

428 A.2d at 850. (Footnote and citations omitted.)

**6.** D.C.Code § 13–334(a), as we have noted in the text, confers jurisdiction over foreign corporations "doing business" in the District. "Doing business" requires a "continuing corporate presence" in the forum. *AMAF Int'l Corp., supra*, 428 A.2d at 851. This standard contemplates a

and the Supreme Court's general jurisdiction due process cases [7] pertain to the exercise of jurisdiction over nonresident corporations for *any* suit, based on the continuing nature and extensive character of the defendant's contacts with the forum. In contrast, both § 13–423 and the Supreme Court's specific jurisdiction cases [8] involve the conferral of jurisdiction where the defendant's contacts with the forum may be less extensive, but where the plaintiff's claim arises from those contacts.

In recognition of this critical distinction, this court has construed, and should continue to construe, the phrase "arising from," as used in § 13–423(b), in the same literal manner that the Supreme Court has construed corresponding language, *i.e.*, "arise out of, or relate to," in *Burger King Corp., supra*, 471 U.S. at 471–73, 105 S.Ct. 2174, *Helicopteros Nacionales supra*, 466 U.S. at 413–16, 104 S.Ct. 1868, and in other specific jurisdiction cases. If § 13–423(b) is read literally, then we must require proof that the plaintiff's injury arose from the defendant's activities in the District, and that she would not have been injured if these activities had not occurred.

The Supreme Court's decisions in general jurisdiction cases such as *Perkins, supra* note 7, which hold that jurisdiction may be exercised over claims unrelated to the defendant's contacts with the forum where these contacts are systematic, continuous, and "sufficiently substantial," 342 U.S. at 447, 72 S.Ct. 413, have no bearing on actions brought pursuant to § 13–423(a). The Court's "general jurisdiction" authorities would be relevant only if jurisdiction had been claimed pursuant to § 13–334(a), a statute which Ms. Moreno has not cited and on which she has not relied.[9]

The majority does not assert that Ms. Moreno's claims "arose" out of Shoppers' contacts in any literal sense. In fact, there is no evidence whatever that Shoppers' advertising in the District induced Ms. Moreno to shop at the defendant's Maryland store, either on the occasion on which Ms. Moreno was injured or at any other time. My colleagues rely instead on the extent of Shoppers' advertising in the District, and they conclude that it would not be unfair to require Shoppers to defend a claim in our Superior Court. The majority thus appears to hold, without specifically saying so, that

---

more substantial connection between the defendant and the District than is required by the long-arm statute. *See Trerotola, supra*, 601 A.2d at 63. Further, "[u]nlike the long-arm statute," § 13–334(a) "confers jurisdiction over the defendant for all purposes, not merely for those claims arising out of the defendant's contracts with the District." *Everett, supra*, 628 A.2d at 108 (citation omitted).

7. A state may exercise general jurisdiction over a foreign corporation for any purpose, even "in a suit not arising out of or related to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), so long as the corporation's contacts are "substantial" and "continuous." *Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140, 1146–51 (D.C.1985). This rule is derived from *International Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in which the Supreme Court recognized that "continuous corporate operations within a state" may be "so substantial and of such a nature as to justify suit ... on causes of action arising from dealings entirely distinct from those activities." *See also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

8. Specific jurisdiction lies where the litigation results from alleged injuries that "arise out of or

relate to" the defendant's "purposefully directed" activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). Where a court seeks to exercise specific jurisdiction, the defendant's "minimum contacts" with the forum need not be as extensive as they must be where general jurisdiction is sought to be invoked. *See, e.g., Helicopteros Nacionales, supra*, 466 U.S. at 413–16, 104 S.Ct. 1868. Indeed, a single transaction may suffice to confer specific jurisdiction. *See, e.g., McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In the absence of a demonstrated nexus between the contacts and the claim asserted, however, due process is satisfied only if the contacts are sufficiently substantial to support general jurisdiction. *See Helicopteros Nacionales, supra*, 466 U.S. at 415–16, 104 S.Ct. 1868.

9. Given the majority's affirmance of the judgment, I take no position as to whether, if the court were to adopt my construction of § 13–423, the case should be remanded for consideration by the trial court of the question whether jurisdiction might be founded on § 13–334(a). *Cf. Guevara v. Reed*, 598 A.2d 1157, 1159 (D.C. 1991).

the long-arm statute may be invoked to confer general jurisdiction over a defendant, even though that statute, by its terms and as heretofore construed, confers jurisdiction only over claims that arise from the defendant's activities in the District.

In my opinion, the majority's approach effectively does away with the distinction between specific and general jurisdiction, as reflected in the language of § 13–423 and § 13–334(a) and in the Supreme Court's analogous jurisprudence. Moreover, the majority's reasoning renders meaningless § 13–423(b)'s provision that jurisdiction under the long-arm statute may be asserted only for a claim for relief arising from the defendant's activities in the forum. Under my colleagues' construction, § 13–423 may be invoked by a plaintiff, such as Ms. Moreno, whose injury is unrelated to the defendant's activities in the District, and who would have been injured even if those activities had never taken place.[10] There is obvious tension between the majority's disposition of this case and the prior decisions of this court that have enforced subsection (b) according to its terms.

I would adhere to the distinction we drew in *Everett* between § 13–334(a), which "confers jurisdiction over the defendant for all purposes," and § 13–423, which confers jurisdiction "merely for those claims arising out of the defendant's contacts with the District." 628 A.2d at 108 (citation omitted). Because my colleagues view the issue differently, I respectfully dissent.[11]

---

10. Indeed, given the majority's interpretation of § 13–423, there would be little if any occasion for a plaintiff to invoke § 13–334(a) as a basis for general jurisdiction. Our "specific jurisdiction" statute, § 13–423, could do double duty and serve as a "general jurisdiction" statute as well.

11. The majority relies heavily on *Trerotola*, but that case does not support affirmance of the judgment. It was never suggested in *Trerotola* that § 13–423 may be invoked as a basis for general jurisdiction. The court did observe that

the bounds of § 13–423(b) are defined by the Due Process Clause. 601 A.2d at 64. In defining those bounds, however, the court relied primarily on specific jurisdiction cases. *Id.* at 63–64. Moreover, the court specifically stated that § 13–423(b) requires a "discernible relationship" between the plaintiff's claim and the defendant's contacts with the forum. *Id.* at 64. In the present case, as in *Trerotola* itself, no such "discernible relationship" has been shown.