SHOPPERS FOOD WAREHOUSE,
Appellant,

v.

Asuncion MORENO, Appellee.

No. 96–CV–21.

District of Columbia Court of Appeals.

Reargued En Banc May 5, 1999.

Decided Feb. 17, 2000.

Michael P. Broderick, Silver Spring, MD, for appellant.

Jill F. Cohen, with whom Wayne R. Cohen, Washington, DC, was on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ and REID, Associate Judges.

## ON REHEARING EN BANC

REID, Associate Judge:

The main issue presented by this case is whether the trial court had personal jurisdiction over appellant, a Maryland corporation which extensively advertised its grocery stores in the District of Columbia's major circulation newspaper and other communications media, where appellee, a District resident, alleged in a negligence "slip and fall" lawsuit that she suffered personal injuries in one of appellant's Maryland stores located near the District's borders. The trial court concluded that it had personal jurisdiction over appellant, and a jury awarded appellee damages for her injuries. A majority panel of this court affirmed the trial court in an opinion issued on July 16, 1998, *Shoppers Food Warehouse v. Moreno*, 715 A.2d 107 (D.C. 1998) (*Moreno I* ). The panel's opinion was vacated and Shoppers' petition for rehearing en banc was granted on January 4, 1999. 722 A.2d 845 (D.C.1999). After rehearing en banc, which we granted only to consider the jurisdictional issue,[1] we reaffirm the trial court's judgment. We hold that the trial court properly exercised personal jurisdiction because appellant, through its extensive advertising activity in a major District of Columbia newspaper, purposefully solicited District residents as customers for its nearby Maryland and Virginia stores and thus transacted business in the District; and further, because Ms. Moreno's claim had a discernible relationship to its advertising, Shoppers could have reasonably anticipated being haled into court to defend against a personal injury suit brought by a District resident.

---

1. We leave intact the division's disposition of the remaining issues on appeal. *See Moreno I,* 715 A.2d at 111–12.

## I.

### FACTUAL SUMMARY

A District of Columbia jury found that on November 20, 1993, appellee Asuncion Moreno slipped and fell on okra in a grocery store owned by appellant Shoppers Food Warehouse, a Maryland corporation ("Shoppers"), and as a result of Shoppers' negligence, sustained back and hand injuries. She was awarded damages in the amount of $197,307 for past and future medical expenses, mental anguish, and pain and suffering. From the beginning of Ms. Moreno's lawsuit, Shoppers argued that, contrary to Ms. Moreno's position, the trial court lacked personal jurisdiction over it under D.C.Code § 13–423(a)(4) (1995) (causing tortuous injury in the District of Columbia).[2] Later, Ms. Moreno claimed that even if jurisdiction were not based on subsection (a)(4), it rested on § 13–423(a)(1) (transacting any business in the District of Columbia). She pointed out that Shoppers placed extensive ads in The Washington Post, a major District of Columbia newspaper, soliciting customers to its stores in Maryland and Virginia. Indeed, the record on appeal is replete with pages of weekly Shoppers' advertisements in The Washington Post between the period October 6, 1993 and December 1, 1993, including November 20, the date on which Ms. Moreno alleged that she fell. The ads for Shoppers' Maryland and Virginia stores contained pictures and prices of produce, meats, canned goods, beverages, candies and other packaged goods.[3] The Shoppers' store where Ms. Moreno was injured is located in Takoma Park, Maryland, within two miles of her home in the District of Columbia.

Shoppers maintained that § 13–423(a)(4) did not apply because no tortious injury took place in the District. Furthermore, Shoppers argued that Ms. Moreno failed to show the applicability of § 13–423(a)(1) which, it asserted, must be read in conjunction with § 13–423(b). It also pointed out that Shoppers is a Maryland Corporation having its principal place of business in Maryland; the store in which Ms. Moreno shopped is located in Maryland; and Ms. Moreno provided no affidavit showing that she actually saw the Washington Post advertisements.

In its order of June 22, 1994, the motions court agreed with Shoppers that subsection (a)(4) was inapplicable because Ms. Moreno's injury occurred in Maryland, not the District. However, the court concluded that there was personal jurisdiction under subsection (a)(1) for the following reasons:

> First, it is reasonable to require the Defendant to defend this suit in the District of Columbia.... The Defendant owns numerous stores in Maryland and Virginia, several of which are located within a few miles of the District of Columbia border.... The Defendant contracts with and advertises in [T]he Washington Post, thereby targeting and soliciting customers in the District of Columbia area .... Furthermore, the Defendant has failed to "show that it [is] at a 'severe disadvantage' in being required to defend in [the District of Co-

---

**2.** In relevant part, D.C.Code § 13–423 states as follows:

> (a) A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
> (1) transacting any business in the District of Columbia;

> \* \* \* \* \* \*

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does

or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

> \* \* \* \* \* \*

> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

**3.** Additional information regarding the ads appears in the analysis section of this opinion.

lumbia];" *Tom Brown & Co. v. Francis,* 608 A.2d 148, 152 (D.C.1992) (quoting *Electronic Media Int'l v. Pioneer Communications, Inc.,* 586 A.2d 1256, 1258 (Me.1991)[) ]. Since the Plaintiff resides in the District, she has a strong interest in litigating this suit here.

Second, the Defendant, by contracting with Washington based businesses (i.e., The Washington Post, the District of Columbia Yellow Pages) for adverti[s]ing purposes, has transacted business in the District of Columbia. Thus, the Defendant purposefully and voluntarily availed itself of the privileges and protections of the District of Columbia....

Finally, the Defendant's contacts with the forum state were of such quality and nature that it is reasonable for the Defendant to reasonably anticipate being haled into court in the District of Columbia. It is reasonable to conclude that the Defendant derives a substantial portion of its revenue from District of Columbia residents—it specifically targets with advertisements that demonstrate how the Defendant's prices compare favorably with the prices in supermarkets.

Although the motions court did not explicitly mention § 13–423(b) in its June order, it referenced a prior trial court opinion, *Daniels v. Kanof,* 116 Daily Wash. L. Rptr. 2053, 2057 (Super.Ct.1988), involving an advertisement in the District by a nonresident corporation. That opinion stressed "the foreseeability of injury to District of Columbia plaintiffs as a result of defendant's actions and the consequences of its actions by soliciting and advertising for business in the District of Columbia."[4] Accordingly, the trial court "conclude[d] that there are enough con-

tacts with the District of Columbia in this case to satisfy the minimum contacts requirement."

## II.

## ANALYSIS

### Personal Jurisdiction

This court has never determined whether newspaper and other advertisements in the District by a nonresident corporation owning a chain of stores, some of which are located in very close proximity to the District's borders, are sufficient to meet the minimum contacts requirement of the District's long-arm statute, and whether the advertising constitutes a sufficient nexus for the District's exercise of personal jurisdiction over a nonresident defendant in a personal injury lawsuit where the injury took place in a store in a neighboring jurisdiction. Trial courts in the District that have examined this issue have disagreed. Judges in both the Superior Court of the District of Columbia and the United States District Court for the District of Columbia have expressed different views at different stages of cases involving Shoppers as a defendant.[5]

### Survey of Supreme Court Decisions and Past Decisions of this Court

Our consideration of this difficult matter begins with a review of past Supreme Court decisions and the past decisions of this court which have interpreted § 13–423(a)(1) and (b). The review will assist us in determining whether the trial court's exercise of personal jurisdiction in this case satisfies the "minimum contacts" requirement of the due process clause, and whether the requirement of § 13–423(b)—

---

**4.** *Daniels* also concluded that "defendant's activities, *i.e.,* the advertising and soliciting for business which presumably has attracted this plaintiff, as well as many other District of Columbia residents to its stores, clearly has caused a consequence in the District, *i.e.,* plaintiff's injuries." 116 Wash. L. Rptr. at 2057.

**5.** The differences in the views of the judges are reflected in the orders of June 22, 1994, and December 15, 1995, in this case; in *Duffy v. Shoppers Food Warehouse,* No. Civ. A. 93–2372, 1994 WL 151204, at *3 (D.D.C. Apr.14, 1994), and in the order of July 31, 1995, transferring the matter to the United States District Court for the District of Maryland.

that a claim for relief under § 13–423(a)(1) must aris[e] from acts enumerated [in § 13–423(a) ]—has been met.

■ In the early years after § 13–423 was enacted, decisions in our cases were guided both by Supreme Court precedent and also by then existing Maryland and Virginia law. We look first at early Supreme Court cases that shaped our initial decisions under § 13–423(a)(1). *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the seminal decision, held that, in keeping with " 'traditional notions of fair play and substantial justice,' " there must be "minimum contacts" between the defendant and the forum state before personal jurisdiction can be exercised consistently with due process.[6] *Id.* at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). At the same time, *International Shoe* emphasized that when a defendant seeks and "enjoys the benefits and protection of the laws" of the forum state, the defendant may face "obligations [which] arise out of or are connected with the [defendant's] activities within the [forum] state." *Id.* at 319, 66 S.Ct. 154 (citations omitted). Under these circumstances, requiring a defendant "to respond to a suit ... [in the forum state] in most instances, hardly [can] be said to be [an] undue [burden]." *Id.*

*Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), further refined the required nexus. A plaintiff's unilateral activity in relation to a defendant cannot alone sustain personal jurisdiction under the "minimum contacts" theory. *Id.* at 253, 78 S.Ct. 1228. Rather, the Court held, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State ...." *Id.* In *Shaffer v.*

*Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), a shareholder's derivative action, and *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), a domestic relations matter, the Supreme Court reiterated the "fairness" and "reasonableness" theme sounded in *International Shoe.* One of the indices of "fairness" and "reasonableness" of the exercise of personal jurisdiction by the forum state is whether the defendant " 'purposefully availed [itself]' of the 'benefits and protections' " of the forum state's laws, *Kulko, supra,* 436 U.S. at 94, 98 S.Ct. 1690 (citing *Shaffer, supra,* 433 U.S. at 216, 97 S.Ct. 2569 (footnote omitted)), and thus, "could reasonably have anticipated being 'haled before a ... court' " in that jurisdiction. *Id.* at 97–98, 98 S.Ct. 1690 (quoting *Shaffer, supra,* 433 U.S. at 216, 97 S.Ct. 2569 (footnote omitted)). *Kulko* also examined whether there was a "sufficient connection" between the defendant and the forum state by determining "whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." *Id.* at 92, 98 S.Ct. 1690. Part of the answer depended on whether the defendant "purposefully derive[d] benefit from any activities relating to the [forum state]." *Id.* at 96, 98 S.Ct. 1690.

The first of our significant cases decided under § 13–423(a)(1), *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808 (D.C.1976) (en banc), not only articulated the aforementioned principles from Supreme Court cases, but also demonstrated that Congress intended the District's long-arm statute, like the corresponding statutes in Maryland and Virginia, to be coextensive in reach with the exercise of personal jurisdiction permitted by the due process clause. Specifically, we stated that:

---

**6.** "[D]ue process requires ... that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. 154 (citations omitted).

[t]he legislative history of [the District's long-arm statute] makes it clear that it was Congress' intent to provide the District with a long-arm statute equivalent in scope to those already in effect in Maryland and Virginia.... In interpreting their statutes, the courts of both Maryland and Virginia have concluded that they permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution.

*Id.* at 810–11 (footnotes omitted). We then stated: "We reach a similar conclusion as to our statute." *Id.* at 811. We "note[d] the trend toward liberalization of jurisdictional limitations" and the fact that "[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." *Id.*[7]

Although our earliest cases did not focus much on § 13–423(b), we had occasion to interpret that provision in *Cohane v. Arpeja–California, Inc.,* 385 A.2d 153 (D.C. 1978), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), where we explained:

The limitation in § 13–423(b) that the claim for relief must arise from the transaction of business in the District of Columbia is meant to prevent "the assertion of claims in the forum state that do not bear some relationship to the acts

in the forum state relied upon to confer jurisdiction." *Malinow v. Eberly,* 322 F.Supp. 594, 599 (D.Md.1971). Once, however, the claim is related to acts in the District, § 13–423 does not require that the scope of the claim be limited to activity within this jurisdiction.

*Id.* at 158–59.[8] Thus, under *Cohane,* if a claim is "related to [defendant's] acts in the District," the requirement of § 13–423(b) is met. We applied the same "relate to" principle in *Berwyn Fuel, Inc. v. Hogan,* 399 A.2d 79, 80 (D.C.1979), where we also made explicit the principle recognized in *Lockwood Greene, supra,* that § 13–423 "permits a jurisdictional reach coextensive with that permitted by the due process clause." *Id.* at 80 (citing *International Shoe, supra,* 326 U.S. at 310, 66 S.Ct. 154; *Cohane, supra,* 385 A.2d at 158). *Berwyn* reiterated that "[t]he only nexus required by [§ 13–423](a)(1) ... between the District of Columbia and the nonresident defendant is 'some affirmative act by which the defendant brings itself within the jurisdiction and establishes minimum contacts.'" *Id.* (quoting *Cohane, supra,* 385 A.2d at 158).

Between 1981 and 1983, after the Supreme Court decided *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), we determined that personal jurisdiction over nonresident defendants existed under our

---

7. *See also Bueno v. La Compania Peruana de Radiodifusion, S.A.,* 375 A.2d 6, 8 (D.C.1977) (focusing upon whether the defendant had engaged in some "purposeful, affirmative activity within the District of Columbia") (citations omitted).

8. In *Malinow, supra,* a decision of the United States District Court for the District of Maryland, the court discussed the (b) subsection of the then existing comparable Maryland long-arm statute which specified: "(b) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." 322 F.Supp. at 597. The Maryland court stated:

The drafters of the forebear of the Maryland statute ... would probably state that § 96(b) merely prevents the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction.... The Court in *McGee,* [*v. International Life Ins. Co.[,]* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957),] stated on page 223 of 355 U.S., [78 S.Ct. 199] that it was sufficient to confer jurisdiction constitutionally that the " * * * suit was based on a contract which had *substantial connection* with that State."

*Id.* at 599 (emphasis added in *Malinow* ).

long-arm statute in four out of five cases.[9] *World–Wide Volkswagen* reaffirmed that "[t]he limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years." *Id.* at 292, 100 S.Ct. 559. It referenced the "fundamental transformation in the American economy" and "[t]he economic interdependence of the States," *id.* at 293, 100 S.Ct. 559, and highlighted two principles governing a due process analysis in personal jurisdiction cases: (1) "the foreseeability that is critical .... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"; and (2) "[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *Id.* at 297, 100 S.Ct. 559 (quoting *Hanson, supra,* 357 U.S. at 253, 78 S.Ct. 1228).

*World–Wide Volkswagen* helped to guide our decisions in the cases decided between 1981 and 1983, the most significant of which were *Mouzavires v. Baxter,* 434 A.2d 988 (D.C.1981) (en banc); *Smith v. Jenkins,* 452 A.2d 333 (D.C.1982); and *Hummel v. Koehler,* 458 A.2d 1187 (D.C. 1983). In addition to following previous announced principles, these cases clarified that "the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum" and are not "fortuitous or accidental." *Mouzavires, supra,* 434 A.2d at 995, 997; *Smith, supra,* 452 A.2d at 337. *Mouzavires* also declared that § 13–423(a)(1) "embraces those contractual activities of a nonresident defendant which cause a consequence [in this jurisdiction]." 434 A.2d at 992. *And see Cockrell v. Cumberland Corp.,* 458 A.2d 716 (D.C.1983) (applying the "cause a consequence" principle).

Between 1984 and 1993, three important decisions were handed down by the Supreme Court: *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Discussion in *Keeton* centered on whether the minimum contacts requirement was met under New Hampshire's long-arm statute in a libel action brought by a resident of New York who sued an Ohio corporation, Hustler Magazine, Inc. in a federal court in New Hampshire. If those contacts are "random, isolated, or fortuitous," the Court stated, due process requirements are not satisfied. 465 U.S. at 774, 104 S.Ct. 1473. The only connection the Ohio corporation had with New Hampshire was the monthly sale of its magazine, issues of which contained the alleged libel that was the focus of the lawsuit. After reiterating the fairness and

9. One of these cases, *AMAF Int'l Corp. v. Ralston Purina Co.,* 428 A.2d 849 (D.C.1981), was decided under D.C.Code § 13–334 pertaining to foreign corporations that "do" or transact business in the District. AMAF International, a District corporation, sued Ralston, a Missouri corporation for negligence and breach of contract relating to an order of 600 bags of poultry feed to be shipped to Nigeria. Ralston engaged in another type of business activity in the District—making sales of its products to local supermarkets. In reversing the trial court's dismissal of the complaint for lack of personal jurisdiction, we stressed a principle re-articulated in *World–Wide Volkswagen, supra,* " 'When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there.' " *AMAF International,* 428 A.2d at 851 (quoting *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559 (other citation and internal quotations omitted))..

reasonableness principles governing the minimum contacts doctrine, the Supreme Court reversed the trial court's dismissal of the complaint, saying in part: "Where, as in this case, respondent Hustler Magazine, Inc., has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id.* at 781, 104 S.Ct. 1473 (citing *World–Wide Volkswagen, supra,* 444 U.S. at 297–98, 100 S.Ct. 559).

*Helicopteros, supra,* elucidated the distinction between general and specific jurisdiction in personal jurisdiction cases: (1) "[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant," 466 U.S. at 414 n. 8, 104 S.Ct. 1868 (citation omitted); and (2) "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Id.* at n. 9 (citations omitted). *Burger King,* in turn, summarized the principles and policies relating to the due process clause and personal jurisdiction. First, the court rejected any "mechanical tests" or "talismanic formulas" for the determination of personal jurisdiction, 471 U.S. at 478, 485, 105 S.Ct. 2174, and reaffirmed that " 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.* at 485–86, 105 S.Ct. 2174 (quoting *Kulko, supra,* 436 U.S. at 92, 98 S.Ct. 1690). Second, "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton, supra,* 465 U.S. at 774, 104 S.Ct. 1473, and the litigation results from alleged injuries that 'arise out of or

relate to' those activities, *Helicopteros, supra,* 466 U.S. at 414, 104 S.Ct. 1868." *Burger King, supra* note 8, 471 U.S. at 472. Third, "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. 2174 (quoting *McGee, supra* note 8, 355 U.S. at 223, 78 S.Ct. 199 (other citation omitted)). Fourth, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. 2174. Finally, "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 473, 105 S.Ct. 2174 (citing *McGee, supra* note 8, 355 U.S. at 223, 78 S.Ct. 199).

Our later decisions construing § 13–423 have been consistent with the teaching of the Supreme Court in these due process cases. *See, e.g., Salins, Inc. v. Sure Way Refrigerated Truck Transp. Brokers, Inc.,* 510 A.2d 1032 (D.C.1986); *Fisher v. Bander,* 519 A.2d 162 (D.C.1986); *Lex Tex Ltd. v. Skillman,* 579 A.2d 244 (D.C.1990); *Trerotola v. Cotter,* 601 A.2d 60 (D.C.1991). In *Fisher,* for example, we stressed three justifications for asserting jurisdiction. First, "[the District] has an interest in providing its residents with the opportunity to redress grievances inflicted by out-of-state defendants." 519 A.2d at 164. Second, "when out-of-state actors avail themselves of the benefits of contact within the forum [asserting jurisdiction], fairness requires that they be held accountable therein for the consequences of such activities." *Id.* Third, "the voluntary establishment of contacts within the forum [asserting jurisdiction] helps to assure that litigating within that [jurisdiction] would not impose an undue burden on the out-of-state party." *Id.* In *Trerotola, supra,* our focus was on § 13–423(b), and the question was "wheth-

er, in the words of § 13–423(b), Cotter's 'claim for relief [arose] from acts enumerated in' any subsection of § 13–423—in this case in § 13–423(a)(1)." 601 A.2d at 63 (citing *Cohane, supra,* 385 A.2d at 158). Pointing out that "§ 13–423(b) bars claims 'unrelated to the acts forming the basis for personal jurisdiction[,]' " *id.* (citing *Willis v. Willis,* 211 U.S.App.D.C. 103, 106, 655 F.2d 1333, 1336 (1981)), we continued:

> For proper jurisdiction, therefore, the long-arm statute requires that the claim raised have a discernible relationship to the "business" transacted in the District . . . . The critical test is whether the nonresident's "conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there." *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559, quoted in *Smith, supra,* 452 A.2d at 336.

*Id.* at 64. *See also Everett v. Nissan Motor Corp. in U.S.A.,* 628 A.2d 106, 107 (D.C.1993), (emphasizing "the seminal requirement that [the out-of-state defendant] must undertake 'some affirmative act by which the defendant brings itself within the jurisdiction and established minimum contact.' ") (quoting *Cohane, supra,* 385 A.2d at 158) (citation omitted).

### Applicable Legal Principles Distilled From Prior Cases

 Even though our survey of past decisions yields no case squarely on point, there are pertinent legal principles which may be distilled from these cases to guide our decision in the case before us: (1) section 13–423(a)(1) is coextensive in reach with the personal jurisdiction allowed by the due process clause of the United States Constitution; (2) there are no "mechanical tests" or "talismanic formulas" for the determination of personal jurisdiction under § 13–423(a)(1) and (b), and the facts of each case must be weighed against notions of fairness, reasonableness and substantial justice; (3) under the due process clause, the minimum contacts principle re-

quires us to examine the quality and nature of the nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental; (4) where a nonresident defendant has purposefully availed itself of the benefits and protections of the District in engaging in a business activity in the forum jurisdiction, it is fair and reasonable to expect it to anticipate being sued in that jurisdiction; (5) in examining the nonresident defendant's contacts with the District, the focus is placed on the relationship among the defendant, the forum and the litigation; (6) it is reasonable and fair for the District to exercise specific jurisdiction where a nonresident defendant has purposefully directed its activities at District residents, and claims against it by a District resident "arise out of *or* relate to," *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174 (emphasis added), or have a "substantial connection" with, *McGee, supra* note 8, 355 U.S. at 223, 78 S.Ct. 199, the business transacted in the District; and (7) the District has a manifest interest in providing a convenient forum in which its residents may seek relief for injuries inflicted by the nonresident defendant, especially where litigation within the District would not impose an undue burden on the nonresident defendant.

We now turn to the application of these principles. However, we begin with the factual context of the case before us since "the facts of each case must [always] be weighed" against notions of fairness, reasonableness and substantial justice in ascertaining whether the court may exercise personal jurisdiction over a nonresident defendant, *Burger King, supra,* 471 U.S. at 485–86, 105 S.Ct. 2174 (internal quotation marks and citation omitted); and because " '[the focus is placed] on the relationship among the defendant, the forum and the litigation.' " *Keeton, supra,* 465 U.S. at 775, 104 S.Ct. 1473 (quoting *Shaffer, supra,* 433 U.S. at 204, 97 S.Ct. 2569) (other citations omitted).

### Factual Context

Shoppers regularly solicits customers for its Maryland and Virginia stores by placing advertisements in the District of Columbia market through The Washington Post, the major newspaper headquartered in Washington, D.C., and other communications media. The record shows extensive Shoppers' weekly advertisements in The Washington Post from October 6 through December 1, 1993, including the November 1993 date on which Ms. Moreno slipped and fell in a Shoppers' store. The weekly ads appeared with the bold caption **"SHOPPERS *TOTAL* WAREHOUSE PRICES ... *EVERYDAY!* FEATURE PRICES IN EFFECT 7 FULL DAYS!"** The body of the ads contained a description of the products for sale in bold letters with the price, and sometimes with a picture of the sale item. At the top of the ad some additional inducement to shop at Shoppers appeared. For example, the October 13 and November 3, 1993 ads for the periods October 13 through 19, and November 3 through 9, 1993, included an opportunity to win tickets to a Washington Redskins football game with an inducement to "see store for details." The ad for November 10 through 16 also offered an opportunity to meet several football players from the Redskins' team on November 23, 1993. In the middle of one of the pages containing the October 1, 1993 ad, Shoppers stated in bold letters: **"No Matter Where You Live ... It's Worth The Drive!"** The November 17 through November 25, 1993 ad pointed to the possibility that customers "could get a free Thanksgiving turkey or ham" if they collected enough coupons; in addition, the ad offered holiday postage stamps with a savings of ten cents on each book of twenty stamps.

All of Shoppers' advertisements in The Washington Post, including those covering the relevant week listed the addresses of its numerous stores located in Maryland and Virginia, including those in Takoma Park, Maryland. The record before us reveals that Shoppers also placed advertisements on television networks in the District, as well as listed one of its stores in the Yellow Pages of the C & P Telephone book in 1993–94. Together with her husband, sister and niece, Ms. Moreno, a District of Columbia resident, was engaged in Thanksgiving shopping on Saturday, November 20, 1993, at one of Shoppers' Takoma Park stores within two miles of her home when she slipped and fell on okra and sustained personal injuries.[10]

### Application of Legal Principles
### To Ms. Moreno's Case

 Having set forth the factual context of Shoppers' contacts with the District and Ms. Moreno's presence in one of Shoppers' Maryland stores, we now analyze the due process issue in two parts. As the guiding principle for both parts of our analysis, we reiterate what we made plain in *Berwyn, supra:* "[Section] 13–423 ... permits a jurisdictional reach coextensive with that permitted by the due process clause." 399 A.2d at 80 (citations omitted); *see also Fisher, supra,* 519 A.2d at 163 ("We have held that [§ 13–423(a)(1) ] is co-extensive with the due process clause of the fifth amendment, and that its construction is subsumed by a due process analysis.") (citations omitted). Therefore, we examine, first, whether the threshold due process requirements have been satisfied in this matter. "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,*

---

**10.** It is important to note that Ms. Moreno never claimed to have seen the Thanksgiving ad.

311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)) (other citations omitted). If the nonresident defendant's business contacts are "sufficiently continuous and systematic" within the forum jurisdiction, the court may exercise general jurisdiction, *Thomason v. Chemical Bank,* 234 Conn. 281, 661 A.2d 595, 599 (1995); *see also International Shoe, supra,* 326 U.S. at 318, 66 S.Ct. 154. If the business contacts within the forum jurisdiction are not "sufficiently continuous and systematic," the court may assert specific jurisdiction "whenever the defendant 'has purposefully directed' [its] activities at residents of the forum, *Keeton, supra,* and the litigation [has] result[ed] from alleged injuries that '*arise out of* or relate to' those activities, *Helicopteros,* [*supra,* 466 U.S. at 414, 104 S.Ct. 1868][;] (Emphasis added.) *Burger King, supra,* 471 U.S. at 472–73, 105 S.Ct. 2174." *Thomason, supra,* 661 A.2d at 599.

### *The Minimum Contacts Requirement*

■ "Even a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." *Lockwood Greene, supra,* 355 A.2d at 811. In this case, Shoppers placed extensive and substantial advertisements in The Washington Post over a continuous period of time, at least from October 1 through December 1. However, it is unnecessary to decide whether these business contacts were "sufficiently continuous and systematic" to confer general jurisdiction in this case, because we are satisfied that the trial court had specific jurisdiction over Shoppers.

Shoppers conducted "purposeful, affirmative activity within the District of Columbia," *Bueno, supra,* note 7, 375 A.2d at 8, by purposefully directing advertisements for its Maryland and Virginia stores at a potential customer base in the District of Columbia, even declaring "No matter where you live . . . it's worth the drive" to Shoppers. *See Burger King, supra,* 471 U.S. at 472, 105 S.Ct. 2174. These adver-

tisements are not random, fortuitous, accidental or attenuated, *see Keeton, supra,* 465 U.S. at 774, 104 S.Ct. 1473; nor are they too trivial to cause a consequence in the District, *see Cockrell, supra,* 458 A.2d at 717, or "too tenuous to satisfy" the minimum contacts requirement of the due process clause. *Everett, supra,* 628 A.2d at 108. Rather they are "of such a quality and nature that they manifest a deliberate and voluntary association with [the District and its residents]." *Mouzavires, supra,* 434 A.2d at 995.

By placing pages of large, illustrated advertisements often in bold letters, with shopping incentives, in the District's major circulation newspaper, The Washington Post, Shoppers obviously solicited customers from the District for their stores in Maryland and Virginia, clearly "with the expectation" that District residents would purchase products sold in those stores. *See Burger King,* 471 U.S. at 473, 105 S.Ct. 2174. Consequently, Shoppers " 'purposefully avail[ed] itself of the privilege of conducting activities within the [District],' " *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559, and "should reasonably [have] anticipate[d] being haled into court [in the District]" by a customer from the District who received an injury in one of its Maryland stores. *Id.; see also Fisher, supra,* 519 A.2d at 163.

### *Fairness and Reasonableness of Exercising Jurisdiction in the District of Columbia*

■ Shoppers had " 'fair warning' " that it could be sued by a District resident who slipped and fell in one of its stores. *Burger King, supra,* 471 U.S. at 472, 105 S.Ct. 2174; *Fisher, supra,* 519 A.2d at 163. By engaging in advertising that reached into the District and locating its stores with convenient access to customers from the District, Shoppers reasonably could have anticipated that these customers would shop at its stores and, once there, be subject to the same hazards as other

customers, including a slip and fall like the one Ms. Moreno suffered. Shoppers therefore had "fair warning" that it could be sued in the home jurisdiction of the customers it courted. Under the circumstances, the District would have a " 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-[jurisdiction] actors." *Burger King, supra,* 471 U.S. at 473, 105 S.Ct. 2174. Nothing in the record before us indicates that defense of Ms. Moreno's action in the District constituted an undue burden on Shoppers. Indeed, "the voluntary establishment of contacts within the forum [jurisdiction] helps to assure that litigating within that [jurisdiction] would not impose an undue burden on the out-of-state party." *Fisher, supra,* 519 A.2d at 164. The Metropolitan Washington, D.C. area functions, in many respects, as a unified legal and commercial community. Consequently, "when out-of-state actors avail themselves of the benefits of contact within the forum [jurisdiction]," as did Shoppers in soliciting customers from the District's population, "fairness requires that they be held accountable therein for the consequences of such activities." *Id.* We are satisfied, then, that the minimum contacts requirement of the due process clause has been met in this case. Shoppers transacted business in the District of Columbia within the meaning of D.C.Code § 13–423(a)(1).[11] Thus, jurisdiction in the Superior Court of the District of Columbia was proper, provided that Ms. Moreno established a nexus between her injury and Shoppers' advertisements in the District sufficient to satisfy § 13–423(b). We turn now to the second due process issue.

### The Nexus Requirement

Section 423(b) states: "When jurisdiction over a person is based solely upon [§ 13–423], only a claim for relief arising from acts enumerated in this section may be asserted against him." The words "claim for relief arising from" also appear in § 13–423(a)(1): "A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a *claim for relief arising from* the person's (1) transacting any business in the District of Columbia" (emphasis added). Supreme Court precedent and our case law have construed § 13–423(b)'s "arising from" requirement flexibly.

▬ The requirement of a nexus between the plaintiff's claim and the defendant's business activities in the forum jurisdiction has been stated in the disjunctive: the claim for relief must "result[ ] from alleged injuries that 'arise out of *or* relate to' those activities." *Burger King, supra,* 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Helicopteros, supra,* 466 U.S. at 414, 104 S.Ct. 1868) (emphasis added). Thus, if the claim either arises out of *or* relates to the nonresident defendant's business activity, specific jurisdiction may be exercised. Earlier, in considering an insurance contract case, *McGee, supra* Note 8, asserted: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum] State." 355 U.S. at 223, 78 S.Ct. 199 (references omitted).

▬ In *Cohane* and *Berwyn* we followed the "relate to" language. *Cohane, supra,* 385 A.2d at 158–59 (under § 13–423(b), "the claim [must be] related to acts in the District"); *Berwyn, supra,* 399 A.2d at 80 ("the claim must relate to the particular act or transaction forming the basis for personal jurisdiction"). In *Lex Tex, supra,* we fleetingly focused on the "aris-

---

**11.** Shoppers argues that "there is simply no evidence in the record from which any conclusion could be reached that Shoppers Food Warehouse MD Corp., the defendant, contracted for any of this advertising, or that it did so in the District of Columbia." However, the trial court could reasonably assume, in the absence of evidence to the contrary and evidence relating to the corporate structure of Shoppers, that the advertisements in the District for Shoppers' grocery stores in Maryland were placed by Shoppers Food Warehouse MD Corp.

ing out of" nexus language, rather than the words "relate to," in concluding that "one can hardly demand the right to come to the District of Columbia to pursue activities exclusively on behalf of an out-of-state principal and expect to be absolutely immune from suit here by that principal for causes of action arising directly out of the performance of such activities," 579 A.2d at 250. Most recently, in *Trerotola, supra,* we interpreted the nexus requirement of § 13–423(b) to mean only "that the claim raised [must] have a discernible relationship to the 'business' transacted in the District." 601 A.2d at 64 (citations omitted). We went on to explain that this "discernible relationship" is shown if " 'certain minimum contacts' between the nonresident and the forum" exist. *Id.* (quoting *World–Wide Volkswagen, supra,* 444 U.S. at 291, 100 S.Ct. 559). These minimum contacts reflect " 'conduct and connection with the forum state . . . such that [the nonresident] should reasonably anticipate being haled into court there.' " *Id.* (quoting *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559). Stated differently, § 13–423(b) bars only "claims 'unrelated to the acts forming the basis for personal jurisdiction.' " *Id.* at 63 (quoting *Willis v. Willis,* 211 U.S.App.D.C. 103, 106, 655 F.2d 1333, 1336 (1981) (other citation omitted)). Section 13–423(b) thus operates as a due process check on the reach or scope of the "transacting business" provision of the long-arm statute.

Other jurisdictions have wrestled with the nexus requirement of specific jurisdiction in a variety of factual settings and have reached diverse conclusions as to the appropriate test for determining the proper nexus between the nonresident defendant's business activity and the claim asserted by the plaintiff. The tests adopted range from narrow or strict causation-based tests to more flexible relatedness tests requiring the showing of some connection or relationship between the claim and the business activity.

Into the strict, causation-based category fall the substantive relevance and proximate cause tests. These tests have sometimes been described as one test: substantive relevance/proximate cause. The substantive relevance test has been explained as follows:

> Under this test, for a cause of action to "arise from or relate to" a defendant's contacts with the forum state, the contacts must have substantive relevance to the cause of action. More plainly, the forum contacts must be necessary to the proof of the cause of action.

Mark M. Maloney, NOTE, *Specific Personal Jurisdiction and the "Arise From Or Relate To" Requirement . . . What Does It Mean?,* 50 WASHINGTON AND LEE LAW REVIEW 1265, 1282 (1993); *see also,* Lea Brilmayer, *How Contacts Count: Due Process Limitations On State Court Jurisdiction,* 1980 SUPREME CT. REV. 77. In *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1259 (1st Cir.1990), the First Circuit summarized and applied the proximate cause test to affirm a federal trial court's dismissal of a negligence action for lack of personal jurisdiction: "Whether certain events 'arise out of' a nonresident defendant's actions within [the forum jurisdiction] is comparable or analogous to whether certain actions can be said to be the legal, or the proximate cause of injuries suffered by a plaintiff." *See also Peckham v. Continental Casualty Ins. Co.,* 895 F.2d 830, 836 (1st Cir.1990).

In a later case, *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 716 (1st Cir.1996), the First Circuit, desiring greater flexibility, deviated from its reliance on the proximate causation test, saying in part: "we intend to emphasize the importance of proximate causation, but to allow a slight loosening of that standard when circumstances dictate," and concluding in the wrongful death action that: "While the nexus between [the nonresident defendant's] solicitation of . . . business [in the forum jurisdiction] and . . . [the] death [of the plaintiff's wife, a Massachusetts' resi-

dent] does not constitute a proximate cause relationship, it does represent a meaningful link between [the nonresident defendant's] contact [with the forum jurisdiction] and the harm suffered." The court also stated, in language relevant to our case: "When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, ... [t]he corporation's own conduct increases the likelihood that a specific resident will respond favorably." *Id.* at 715.

Other courts have rejected the substantive relevance/proximate cause test altogether. For example, in *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal.4th 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085 (1996), the court stated: "[A] proximate cause test ... is inconsistent with the fairness rationale underlying the specific jurisdiction doctrine. A person who purposefully avails himself or herself of the benefits of doing business in the forum state must be prepared to answer lawsuits that relate to his or her activity there." *Id.* at 1104 (referencing *Burger King, supra,* 471 U.S. at 472, 105 S.Ct. 2174); *see also* Mary Twitchell, *The Myth of General Jurisdiction,* 101 HARV. L. REV. 610, 653–54 (1988) ("[T]he substantive relevance approach is not the best guide to dispute-specific jurisdiction" in part because "[t]he Supreme Court did not limit the specific jurisdiction quid pro quo rationale in *International Shoe* to claims 'directly arising out of' forum activities; it noted that due process would be satisfied 'in most instances' if the obligations arise out of *or are connected with* the activities within the state.") (footnote omitted).

· The "but for" test has been adopted by other courts. In contrast to the First Circuit, for example, the Supreme Judicial Court of Massachusetts has rejected the substantive relevance/proximate cause test in favor of a "but for" test. *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 553 (1994) ("There is no readily apparent basis in the statutory language ('arising from') for the restrictive proxi-

mate cause approach adopted by the First Circuit.") (Citation omitted). The "but for" test has been described as follows:

> [T]he general theory [of the "but for" test] is that a cause of action 'arises from or relates to' the defendant's forum state activities when "but for" those activities the cause of action would not have arisen. Therefore, if a plaintiff can trace the train of events leading up to the cause of action and find that the defendant's activities contribute to this chain, the cause of action is said to arise from those activities for the purposes of determining personal jurisdiction.

Maloney, *supra,* 50 WASHINGTON AND LEE LAW REVIEW at 1277 (footnotes omitted). In *Alexander v. Circus Circus Enterprises, Inc.,* 939 F.2d 847 (9th Cir.1991), the Ninth Circuit said: "[T]he critical focus in the 'arising out of' prong is whether, 'but for' the defendant's forum-related activities, the injury would have occurred; that is, whether the 'entire course of events ... was an uninterrupted whole which began with, and was uniquely made possible by, the [defendant's] contacts in the [forum state].'" *Id.* at 853 (quoting *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 384 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). The Supreme Court of California has rejected the "but for" test as probably "too lax" because "theoretically [it] may include any historical cause of the plaintiff's injuries," *Vons Companies, supra,* 58 Cal.Rptr.2d 899, 926 P.2d at 1106, and because it "is overly mechanical and fails to concentrate on the central issue presented by a motion to quash for lack of specific jurisdiction— that is, whether the defendant's forum contacts and plaintiff's claim are related sufficiently so that it is *fair* to subject the defendant to jurisdiction in the forum." *Id.* at 1108 (emphasis supplied); *see also* BRILMAYER, *supra,* 1980 Supreme Court Review at 84.

Two other nexus tests should be mentioned. As early as 1976, the Supreme Court of California applied the "substantial

connection" test to determine whether the nexus requirement had been satisfied: "Our inquiry is directed to whether plaintiff's cause of action, based on an accident which resulted from defendant's allegedly tortuous act in Nevada, arises out of or has a substantial connection with a business relationship defendant has purposefully established with California." *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264, 267 (1976). In 1995, after revisiting the issue of the proper nexus test and surveying other case law, the Supreme Court of California decided to retain its "substantial connection" test as a flexible standard which best interprets the relatedness requirement. The court stated:

> A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate. The due process clause is concerned with protecting nonresident defendants from being brought unfairly into court in the forum, on the basis of random contacts. That constitutional provision, however, does not provide defendants with a shield against jurisdiction when the defendant purposefully has availed himself or herself of benefits in the forum.

*Vons Companies, supra,* 926 P.2d at 1096. *See also Domtar, Inc. v. Niagara Fire Ins. Co.,* 533 N.W.2d 25, 31 (Minn.1995) ("When a claim arises out of a contract that has a 'substantial connection' with the forum state, specific jurisdiction exists." (citing *McGee, supra* note 8, 355 U.S. at 223, 78 S.Ct. 199)).

The Supreme Court of Connecticut also articulated a flexible or less restrictive reasonably foreseeable standard in *Thomason, supra,* declaring:

> The words "arising out of" ... must be interpreted in a manner that recon-

ciles the legislative decision to impose some limits on constitutionally permitted jurisdiction with its decision not to require a causal connection between the defendant's solicitation here and the plaintiffs' lawsuit. Our interpretation is as follows. For purposes of [the applicable Connecticut long-arm statutory provision], a plaintiff's "cause of action aris[es] ... out of ... business solicited in this state" if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs.

661 A.2d at 603.

Based upon our review of nexus tests used in other jurisdictions, the criticisms leveled at some of them, and the Supreme Court's admonition that there are no "mechanical tests" or "talismanic formulas" for the determination of personal jurisdiction, we see no reason to deviate from—and thus we reaffirm—our past decisions which have interpreted the "arise from" language of § 13–423(b) flexibly and synonymously with "relate to" or having a "substantial connection with," in the same way that the Supreme Court's due process analysis has used these terms interchangeably. This means that, for the Superior Court to have jurisdiction over Ms. Moreno's claim, the claim had to be related to or substantially connected with Shoppers' advertising activity in the District, *Cohane, supra,* 385 A.2d at 158; *Berwyn, supra,* 399 A.2d at 80; that is, as we said in *Trerotola, supra,* 601 A.2d at 64, it had to have some "discernible relationship" to Shoppers' advertising activity. Where Shoppers has deliberately and directly solicited District residents to become customers in its Maryland and Virginia stores, there can be no doubt that its advertising relates to or has a discernible relationship to a claim by a District resident who becomes a customer in one of Shoppers'

stores and is injured. This is true because it is reasonably foreseeable that, as a result of advertising extensively and over a substantial period of time in the District's major circulation newspaper, Shoppers could be sued in the District on a claim similar to that filed by Ms. Moreno. *See Thomason, supra,* 661 A.2d at 603. The trial court found that Shoppers "owns numerous stores in Maryland and Virginia, several of which are located within a few miles of the District of Columbia border." The trial court also determined that Shoppers "contracts with and advertises in [T]he Washington Post [and the Yellow Pages], thereby targeting and soliciting customers in the District of Columbia area." In doing so, it "voluntarily availed itself of the privileges and protections of the District of Columbia ...." Accordingly, the trial court concluded, Shoppers' "contacts with the [District] were of such quality and nature that it is reasonable for [it] to reasonably anticipate being haled into court in the District of Columbia."

Shoppers contends that in this case the nexus requirement is not satisfied because there is no inherent relationship between the duty breached (to provide a safe store) and the "transaction" of advertising in the District of Columbia media. Under this reading of the nexus requirement, Ms. Moreno would have to show something akin to false advertising by Shoppers. But since we require only a showing of a "discernible relationship" between the particular claim and the business transacted, Shoppers imposes too heavy a burden. *Trerotola,* 601 A.2d at 64. The record reveals extensive and repeated advertising by Shoppers in The Washington Post. In light of such advertising, Ms. Moreno's case is dissimilar to those in which plaintiffs based their jurisdictional claims on a single advertisement, or sporadic advertising from a travel agency located far from the forum state. *See, e.g., Crocker v. Hilton Int'l Barbados, Ltd.,* 976 F.2d 797, 799 (1st Cir.1992); *Witbeck v. Bill Cody's Ranch Inn,* 147 Mich.App. 587, 383

N.W.2d 253, 256 (1985), *rev'd,* 428 Mich. 659, 411 N.W.2d 439, 445 (1987).

■ Consistent with the trial court's conclusion, we hold that the trial court properly exercised jurisdiction in this matter because appellant, through its extensive advertising activity in a major District of Columbia newspaper purposefully and deliberately solicited District residents as customers for its nearby Maryland and Virginia stores and thus transacted business in the District; and further, because Ms. Moreno's claim was related to or had a discernible relationship to its advertising, Shoppers could have reasonably anticipated being haled into court to defend against a personal injury suit brought by a District resident. In short, Ms. Moreno met the requirements of § 13–423(b).

### *Shoppers' Fear of Virtually Unlimited Jurisdiction*

In its final argument Shoppers' raises the specter of "virtually unlimited jurisdiction in the District over businesses and claims with little or no relationship to the District." This is an argument without support in fact or law. *World–Wide Volkswagen, supra,* made clear that "the foreseeability that is critical ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. 559. Under our fact-driven analysis in this specific jurisdiction case, while Shoppers' advertising solicitation of customers from the District will support a slip and fall injury claim, vendors who sell their produce to Shoppers' stores—or, for that matter, a Shoppers' employee who slips and falls in a company warehouse in Maryland—are not within the class solicited by Shoppers' extensive advertising in The Washington Post. Moreover, non-directed Internet advertising might present a different factual situation from the one before us. *See E–Data Corp. v. Micropatent Corp.,* 989 F.Supp. 173, 177 (D.Conn.1997) (defendant's Internet advertising that had

"the potential to reach ... Connecticut consumers" was insufficient as a basis for personal jurisdiction because "hundreds of thousands of Web sites [existed] on the Internet").

■■■ "[W]here a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King, supra,* 471 U.S. at 477, 105 S.Ct. 2174. Shoppers has not presented a compelling case that the District now will exercise unlimited jurisdiction over businesses.

Judge Schwelb's dissent, for its part, appears to depend entirely on the distinction between Ms. Moreno and a hypothetical plaintiff who could testify, "Yes, I've seen Shoppers' ads, they've got great prices!" Such testimony presumably would support the inference he believes necessary that the plaintiff was actually induced to visit a Shoppers store by the advertising. Insistence on whether the plaintiff saw the ads in question shifts the focus of the due process inquiry away from where the Supreme Court has placed it, on the defendant's actions. Furthermore, it minimizes the importance and purpose of the long-arm statute, which we have always understood to afford District residents broad access to our courts limited only by due process considerations.

1. There is no contention in this case that the court's jurisdiction derives from D.C.Code § 13–334 (1995) (authorizing service upon a foreign corporation doing business in the District of Columbia or transacting business in the District arising out "of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District"), or D.C.Code § 13–422 (pertaining to jurisdiction over corporations organized under the laws of, or maintaining a principal place of business in the District, as to any claim).

2. The long-arm statute, § 13–423 provides in pertinent part:

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

WAGNER, Chief Judge, dissenting:

The mere fact that a foreign corporation advertises for business within the District Columbia is insufficient under our long-arm statute for our local court to exercise personal jurisdiction over that corporation for claims unrelated to that advertising which arise wholly in the foreign state.[1] Since the majority appears to hold otherwise, I respectfully dissent. In order for the District of Columbia Courts to properly assert personal jurisdiction over a foreign corporation, "service of process over the nonresident must be authorized by statute and be within the confines of the due process clause of the United States Constitution." *Cohane v. Arpeja–California, Inc.,* 385 A.2d 153, 158 (D.C.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The statutory provisions at issue here are D.C.Code §§ 13–423(a)(1) and –423(b) (long-arm statute).[2] There is no real dispute in this case that Shoppers Food Warehouse's (Shoppers') advertisements for customers within the District were sufficient minimum activities to meet the "transacting business" requirement of § 423(a)(1). *See Trerotola v. Cotter,* 601 A.2d 60, 63 (D.C. 1991) (citing *Cohane,* 385 A.2d at 158).[3]

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's -
 (1) transacting any business in the District of Columbia;

 ＊ ＊ ＊ ＊ ＊ ＊

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

3. "Under § 13–423(a)(1), less of a nexus between the defendant and the District of Columbia is required for a finding of jurisdiction than would be required under the 'doing business' test used to determine corporate pres-

What divides the court is whether the further condition imposed by § 13–423(b) is satisfied. I agree with my dissenting colleagues that it is not. Section 423(b) bars the exercise of jurisdiction over a foreign corporation where the claim is unrelated to the business transacted in the District by the corporation. *See Trerotola*, 601 A.2d at 63. In other words, under this section, "jurisdiction is limited to claims arising from the particular transaction of business which provides the basis for jurisdiction." *Cohane*, 385 A.2d at 158 (citing D.C.Code § 13–423(b)). Ms. Moreno's claim arose out of injuries she sustained in an accident which occurred in Shoppers' Maryland store as a result of Shoppers' negligent act or omission in the state of Maryland. There is simply no relationship here between Shoppers' advertisements in the District and Shoppers' alleged tortious conduct which caused Ms. Moreno to slip and fall in Maryland as required by our statute. To accept the contrary position would render the limitation imposed by § 423(b) a nullity. That we have "interpreted this statute as permitting the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause,"[4] does not eliminate the requirement that the courts of this jurisdiction adhere to the process due under our statute. That process, as set forth in our long-arm statute, provides in § 423(a)(1) and (b) a specific basis for the court's exercise of personal jurisdiction over a foreign corporation. The exercise of that jurisdiction must conform to the statute and be consistent with due process. *See Trerotola*, 601 A.2d at 64; *Cohane*, 385 A.2d at 158. Under § 13–423(b), unless the claim "has a discernible relationship to the 'business' transacted in the District[,] . . . asserted jurisdiction exceeds the limits of the due process clause of the Constitution." *Trerotola*, 601 A.2d at 64 (citing *Cohane*, 385 A.2d at 158). Here, there was only the fortuity of Ms. Moreno having an

accident in a store in Maryland belonging to Shoppers, a foreign corporation which happens to advertise for customers in a daily newspaper which is distributed in the metropolitan area. Her cause of action neither arises out of, nor is it related to Shoppers' advertising activities. For these reasons, and essentially for those set forth in Judge Schwelb's dissenting opinion, I respectfully dissent from the opinion of the court.

SCHWELB, Associate Judge, with whom STEADMAN, Associate Judge, joins, dissenting:

When this case was before the division, I explained in some detail why, in my view, Ms. Moreno has failed to establish that her claim "ar[ose] from" Shoppers' contacts with the District of Columbia. *See Shoppers Food Warehouse v. Moreno*, 715 A.2d 107, 112–16 (D.C.1998) (*Moreno I*) (dissenting opinion). I pointed out that "[s]o far as we can discern from the record, Ms. Moreno would have suffered the injuries for which she seeks compensation in this action even if Shoppers had not advertised in the District at all." *Id.* at 113. The suggestion that Ms. Moreno's claim "arises from" Shoppers' advertising, when she would have sustained her injuries even in the absence of a single ad, ascribes a distinctly odd meaning to the rather straightforward statutory language. I continue to adhere to the position I took in *Moreno I*, and rather than burdening a second volume of the Atlantic 2d Reporter with the same dissenting prose, I incorporate by reference my separate opinion at the division level. Because the en banc majority now invokes the legislative history of our long-arm statute, D.C.Code § 13–423(b) (1995), as well as the case law of certain other jurisdictions, I think it appropriate to add the following observations to the views expressed in my opinion in *Moreno I*.

---

ence." *Cohane, supra*, 385 A.2d at 158 (citation omitted).

**4.** *Cohane, supra*, 385 A.2d at 158.

## I.

In its discussion of the issue presently before us, the court surveys a plethora of federal and local decisions, and correctly notes that there is no District of Columbia case "squarely on point." See maj. op. at 329. But as the majority points out, "[t]he legislative history of the District's long arm statute makes it clear that it was Congress' intent to provide the District with a long-arm statute equivalent in scope to those already in effect in Maryland and Virginia." *Id.* at 326 (quoting *Environmental Research Int'l Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 810 (D.C.1976) (en banc)). The legislature having focused on Maryland and Virginia, we should surely explore the construction by courts in these neighboring jurisdictions of the statutes on which our own legislation was based.

Maryland's specific jurisdiction long-arm statute is identical to the District's in all material respects. See Md.Code Ann. Cts. & Jud. Proc. § 6–103 (1994). The Maryland Court of Appeals has stated that in enacting the statute, the legislature intended "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Camelback Ski Corp. v. Behning*, 307 Md. 270, 513 A.2d 874, 876 (1986) (*Camelback I* ), *vacated and remanded on other grounds*, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987). The exercise of specific jurisdiction is permissible in Maryland if the suit arises out of, or is directly related to, the defendant's activities in the state. See *Camelback Ski Corp. v. Behning*, 312 Md. 330, 539 A.2d 1107, 1111 (1988) (*Camelback II* ); *accord, Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 654 A.2d 1324, 1329–30 (1995); *Talegen Corp. v. Signet Leasing and Fin. Corp.*, 104 Md.App. 663, 657 A.2d 406, 410–

11 (1995); *Piracci v. New York City Employees' Retirement Sys.*, 321 F.Supp. 1067, 1072 (D.Md.1971).[1] Although the Maryland cases do not specifically decide the question presented to us here, I think it unlikely that, in the absence even of a "but for" connection between Shoppers' advertising and Ms. Moreno's accident, the Maryland courts would conclude either that the plaintiff's injury "arose from" Shoppers' activities in the District or that it was "directly related" to them.

Ms. Moreno's prospects would be even less promising under Virginia law. That state's long-arm statute is also identical to the corresponding District provision in all material respects. See Virginia Code § 8.01–328.1(A)–(B) (1992). In construing the extent of *in personam* jurisdiction under Virginia's long-arm statute, the Supreme Court of Virginia, much like its counterparts in the District and in Maryland, has stated that the legislative purpose was "to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971).

When jurisdiction is based solely on an out-of-state defendant's transaction of business in Virginia, the plaintiff's claim must arise from the business transacted in the state. See Virginia Code § 8.01–328.1(A)–(B). The United States District Court for the Eastern District of Virginia has interpreted the phrase "arising from" as follows:

> Plain meaning is the starting point in the analysis, and *"caused by" is the phrase's plain meaning.* Thus, it is evident that Virginia's General Assembly used the phrase "arising from" to require that there be a causal link between the acts relied on for personal jurisdiction and the cause of action asserted.

---

**1.** In *Camelback I*, 513 A.2d at 881 n. 7, the court left open the questions whether the terms "arising out of" and "related to" have different meanings and, if they do, whether

specific jurisdiction may be asserted where the plaintiff's claim relates to, but does not arise out of, the defendant's activities in Maryland.

Significantly, courts agree that *this causation element requires more than simple "but-for" causation; it requires something akin to legal or proximate causation.*

*Chedid v. Boardwalk Regency Corp.,* 756 F.Supp. 941, 943 (E.D.Va.1991) (emphasis added) (citing *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1259 (1st Cir. 1990)) [2]; *see also City of Virginia Beach v. Roanoke River Ass'n,* 776 F.2d 484, 487 (4th Cir.1985) ("[i]n order for a cause of action to arise from business transacted in Virginia, the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim"); *Verosol v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 589–90 (E.D.Va.1992).[3]

In *Chedid,* the plaintiff slipped and fell in an elevator at a New Jersey casino. He brought a negligence action in a United States District Court in Virginia against the corporate owner of the establishment. The plaintiff argued that the court had jurisdiction over the defendant under Virginia's long-arm statute because the casino had solicited customers and placed ads in Virginia, and because his claim had arisen from these activities in the forum. Although the plaintiff alleged that the defendant's telephonic solicitation, in which it had offered free limousine travel to and from New Jersey, had induced him to go to the casino,[4] the court held that it did not have jurisdiction over the corporation, reasoning that there was no causal relationship between the plaintiff's accident and the corporation's transaction of business in Virginia. *Chedid, supra,* 756 F.Supp. at 943. "[P]laintiff's cause of action is one

'arising from' the defendant's alleged negligence in leaving the elevator floor wet and slippery, not from defendant's wholly unrelated advertising and solicitation activities." *Id.*

The phrase "arising from" in the Virginia statute has thus been construed as requiring a strong causal link between the defendant's transaction of business in the state and the plaintiff's claim. No such causal link is alleged here. The common sense interpretation of the statutory language by the court in *Chedid* is fatal to Ms. Moreno's position in this case.

## II.

In my opinion, the foregoing authorities render it most improbable that Ms. Moreno could prevail if the controversy were to be decided under the Maryland or Virginia statutes. The majority, however, has chosen not to look to Maryland or Virginia law, on which the District's statute was based, but to rely instead on precedents from Connecticut and California. But the cases from these jurisdictions were decided under statutes that differ significantly from the District's, and they therefore provide scant support for the majority's position.

In *Thomason v. Chemical Bank,* 234 Conn. 281, 661 A.2d 595, 601 (1995), the Supreme Court of Connecticut held that the phrase "arising out of" in the Connecticut long-arm statute "does not require a causal connection between the defendant's forum-directed activities and the plaintiffs' lawsuit." Connecticut's long-arm statute, however, provides that a suit must arise

---

**2.** In *Pizarro,* the court stated:

> Whether certain events "arise out of" a nonresident defendant's actions within Puerto Rico is comparable or analogous to whether certain actions can be said to be the legal, or proximate cause of injuries suffered by a plaintiff.

907 F.2d at 1259. It appears obvious to me that Ms. Moreno's fall was not proximately caused by Shoppers' advertising.

**3.** It appears that the Virginia state courts have not yet addressed this issue. *See Chedid, supra,* 756 F.Supp. at 944.

**4.** Unlike the plaintiff in *Chedid,* Ms. Moreno offered no evidence that she was induced to go to Shoppers Food Warehouse by Shoppers' advertising in the District. The court in *Chedid* thus went further than I find it necessary to go in order to conclude that jurisdiction was lacking in the present case.

out of the defendant's contacts with the state in order to permit Connecticut's courts to exercise either general or specific jurisdiction. The court recognized that if the words "arising out of" were construed as imposing a causation requirement,[5] "the statute would limit our courts to the exercise of 'specific' jurisdiction and prohibit our courts from exercising any 'general' jurisdiction." *Id.* at 600–01. The court sensibly reasoned that the legislature had not intended to exclude general jurisdiction entirely, but had elected instead to enact a more restrictive test for general jurisdiction than the Constitution requires. *Id.* at 602. In fact, *Thomason* was brought and decided as a general jurisdiction case. *Id.* at 603–05.

Unlike the Connecticut statute, the District's general jurisdiction long-arm statute permits the Superior Court to exercise jurisdiction even if a plaintiff's claim does not arise out of an out-of-state defendant's activities in the forum. *See* D.C.Code § 13–334(a). Thus, *Thomason* is unhelpful to Ms. Moreno for two reasons: (1) unlike the Supreme Court of Connecticut, this court need not accord an artificially broad construction to the words "arising from" in the District's *specific* jurisdiction statute, for the Superior Court may exercise general jurisdiction without a showing that the claim arises from the defendant's activities in the forum; and (2) in *Thomason,* the court was construing the phrase "arising out of" as it appears in Connecticut's general jurisdiction long-arm statute, while Ms. Moreno brought her case solely under the District's specific jurisdiction statute.

The majority also cites California's "substantial connection" test as support for the Superior Court's exercise of jurisdiction in this case. See maj. op. at 335. The Supreme Court of California has stated:

A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate. The due process clause is concerned with protecting nonresident defendants from being brought unfairly into court in the forum, on the basis of random contacts. That constitutional provision, however, does not provide defendants with a shield against jurisdiction when the defendant purposefully has availed himself or herself of benefits in the forum.

*Vons Cos. v. Seabest Foods, Inc.,* 14 Cal.4th 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085, 1096 (Ca.1996).

Unlike its counterpart in the District, California's long-arm statute does not have an "arising from" requirement. Rather, California's long-arm statute states that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal.Code Civ. Proc. § 410.10 (1999). Thus, even if one were to assume that Ms. Moreno's claim has a "substantial connection" with Shoppers' activities in the District—a distinctly dubious assumption—the analysis in *Vons* sheds little light on the proper construction of the phrase "arising from" in § 13–423(b).

**5.** Significantly, the court explained:

Some [federal] courts have suggested, in dicta, that specific jurisdiction may be exercised without proof of a causal connection between the defendant's forum-directed activities and the lawsuit. All of those courts, however, have based their conclusion on the fact that the specific jurisdiction test merely requires that the cause of action "arise out of *or relate to* " the defendant's forum-directed activities.... Thus, even if the constitutional test for specific jurisdiction does not require a causal connection between the defendant's contacts with the forum and the lawsuit, it is only because that test contains not only the "arising out of" language, but also the "relating to" language. *If the constitutional test employed only the "arising out of" language, a causal connection would be required.*

*Id.* at 600 n. 4 (emphasis added). The District's statute, of course, does not contain the words "relate to."

### III.

There is a widespread perception in the community at large that lawyers and judges sometimes make things unnecessarily complicated. I suggest that if one were to tell an intelligent lay citizen that Shoppers advertised widely in the District but that there was no evidence that Ms. Moreno ever read Shoppers' ads, and if one were then to ask that citizen whether Ms. Moreno had proved that her "slip and fall" accident "arose from" Shoppers' advertising, the interrogated individual would look at the questioner rather incredulously and then answer "of course not," or words to that effect. I believe that the result would be the same if this issue were posed to a professor of English. This is a case in which, in my judgment, the legal profession could profitably look at the problem as the average citizen would, and accord the words used by the legislature their common sense meaning.

I respectfully dissent.